The FEDERAL SAVINGS & LOAN INSURANCE CORP., etc., Plaintiff,

and

First Gibraltar Bank, FSB, Intervenor–Appellee,

v.

Jack GRIFFIN, Defendant–Appellant.

No. 90–1301.

United States Court of Appeals, Fifth Circuit.

July 15, 1991.

Rehearing Denied Aug. 19, 1991.

Bill C. Hunter, Stephen J. Mass, Hunter, Van Amburgh & Wolf, and Tresi Moore Freemyer, Richard Jackson, Richard Jackson & Assoc., Dallas, Tex., for defendant-appellant.

Steven P. Anderson, Mary L. O'Connor, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., for intervenor-appellee.

Before JOHNSON, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Intervenor-appellee First Gibraltar Bank, FSB ("First Gibraltar") seeks to recover under a guaranty executed by defendant-appellant Jack Griffin. The district court granted summary judgment in favor of First Gibraltar. Griffin appeals, claiming breach of other agreements and other matters.

## FACTS

Griffin began an unsuccessful attempt to make money in Dallas real estate in 1985 when he and Worth Williams formed a joint venture named Village at Spring Park Joint Venture ("joint venture"). Griffin and Williams approached First Texas Savings Association ("First Texas") about the possibility of a loan for the joint venture. Griffin and Williams sought financing in three stages: purchase and planning, construction, and permanent financing. On July 11, 1985, First Texas agreed to fund the first phase and loaned 5.6 million dollars to the joint venture. A deed of trust and security agreement covering certain real property in Dallas secured the promissory note. Concurrently with execution of the note, Griffin and Williams executed and delivered a guaranty in favor of First Texas, by which they unconditionally guaranteed the prompt payment of the note in an amount limited as set out in the guaranty. First Texas had an option to finance the next two stages of the project.

Like many businesses in Texas real estate, the joint venture fell upon hard ti. s in 1986. First Texas added to the joint venture's troubles by refusing to exercise its option to supply construction financing. The joint venture subsequently failed to fulfill its obligations under the note. By letter dated October 9, 1986, First Texas notified the joint venture, Griffin, and Williams of default under the note. Payment of amounts due was demanded, and notice was given of intention to accelerate the note if the default was not cured by noon on October 14, 1986. The joint venture failed to cure the default. By letter dated October 14, 1986, First Texas gave notice that it was accelerating the note and also notice of a substitute trustee's sale of the property described in the deed of trust. On November 4, 1986, the joint venture, which held title to the property, filed for federal bankruptcy protection under Chapter 11. An automatic stay prevented the foreclosure sale of the property.

In March 1987, First Texas filed suit in state court against Griffin and Williams on the basis of the guaranty the two had executed. The federal bankruptcy court subsequently modified the automatic stay, which had been protecting the joint venture, and the court permitted a foreclosure sale. First Texas gave notice of substitute trustee's sale by letter dated April 13, 1987. First Texas purchased the property at the sale for $3,888,500.

The state court suit against Williams and Griffin continued for the deficiency due under the promissory note. Williams was subsequently dismissed from the case after he filed for bankruptcy protection.

First Texas itself fell into financial difficulties. On December 27, 1988, the Federal Home Loan Bank Board ("FHLBB") placed First Texas in receivership and appointed Federal Savings and Loan Insurance Corporation ("FSLIC") as receiver. The Texas Savings and Loan Commissioner concurred that grounds existed for authorizing appointment of FSLIC as receiver for First Texas. Once it became receiver, FSLIC automatically succeeded to all of First Texas' assets and liabilities. Shortly thereafter, FSLIC entered into a purchase and assumption agreement with First Gibraltar, a newly chartered federal institution. First Gibraltar purchased substantially all of First Texas' assets and assumed the deposit and secured liabilities of First Texas.

On January 26, 1989, FSLIC removed the suit against Griffin to federal court. First Gibraltar intervened on July 3, 1989. On November 21, 1989, the district court granted Griffin's motion to dismiss without prejudice his counterclaims against Federal Deposit Insurance Corporation ("FDIC"), which had succeeded FSLIC as receiver of First Texas. The only parties to this appeal are First Gibraltar and Griffin. Having assigned the guaranty and the promissory note to First Gibraltar, FDIC as receiver for First Texas is apparently no longer pursuing any claims against Griffin.

In federal district court, Griffin asserted four affirmative defenses to defeat his liability under the guaranty: breach of partnership duties, usury, wrongful foreclosure of property, and breach of agreement to

fund.[1] First Gibraltar asserts that the defenses are barred by the doctrine established in *D'Oench Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). That doctrine protects the FDIC and FSLIC from unrecorded side agreements not reflected in the bank's records. First Gibraltar also asserts that the defenses are barred by state law. The district court agreed that Griffin was liable under the guaranty in spite of his claimed defenses. We affirm.

## DISCUSSION

### I. REMOVAL

■ Griffin first appeals on the ground that federal courts lack subject matter jurisdiction over this case and that therefore the district court should have remanded the case to state court.

FSLIC removed this suit to federal court pursuant to 12 U.S.C. § 1730(k)(1). Under this section, FSLIC can remove to federal court any action to which it is a party. Such action is deemed by § 1730(k)(1) to "arise under the laws of the United States." A proviso excepts from the statute's general grant of federal jurisdiction cases that meet two conditions: (1) only rights or obligations of investors, creditors, stockholders, and a state-chartered institution in FSLIC receivership or conservatorship are at issue, *and* (2) only questions of state law are involved. Griffin argues that the proviso applies to this case, that § 1730(k)(1) is thus inapplicable, and that no other grounds for removal remain.

According to § 1730(k)(1), this case arises under the laws of the United States because FSLIC was a party at the time of

removal. Federal subject matter jurisdiction therefore exists. The proviso is not applicable because of the presence of "non-proviso" parties. First Gibraltar, a newly chartered federal institution, is a non-proviso party. *See Bean v. Independent Am. Sav. Ass'n*, 838 F.2d 739, 742 (5th Cir.1988); *Andrew D. Taylor Trust v. Security Trust Fed. Sav. and Loan Ass'n*, 844 F.2d 337, 341 (6th Cir.1988); *North Mississippi Sav. & Loan Ass'n v. Hudspeth*, 756 F.2d 1096, 1100 (5th Cir.1985), *cert. denied*, 474 U.S. 1054, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986).[2]

■ Even if § 1730(k)(1) did not provide federal subject matter jurisdiction, the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) would. Section 407 of FIRREA repealed 12 U.S.C. § 1730(k)(1), and § 209 amended 12 U.S.C. § 1819. Section 1819 now provides that federal courts have jurisdiction over suits in which the FDIC is a party except when the FDIC is appointed *exclusively* by state authorities *and* when the case involves certain types of state law claims. The exception to § 1819 is not applicable here because state authorities did not exclusively appoint FSLIC as a receiver. FHLBB, a federal agency, appointed FSLIC as receiver. FDIC later replaced FSLIC as receiver because FIRREA transferred FSLIC's functions to FDIC.

Amended § 1819 applies here even though FIRREA became law after removal and even though FSLIC removed this case. Section 1819 applies retroactively to cure any possible jurisdictional defect in either FSLIC's or FDIC's removal. *Triland Holdings & Co. v. Sunbelt Services Corp.*, 884 F.2d 205, 207 (5th Cir.1989); *accord Sunbelt Sav., FSB v. Bent Trail Phase IV*

**1.** The counterclaims Griffin asserted against FDIC were also breach of partnership duties, usury, wrongful foreclosure of property, and breach of agreement to fund.

**2.** The Supreme Court in *Coit Independence Joint Venture v. Federal Savings and Loan Insurance Corp.*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989) effectively overruled one of our holdings in *Hudspeth*. In *Hudspeth*, we ruled that federal statutes required exhaustion of administrative remedies before pursuit in federal court of claims against failed savings and loan institutions in FSLIC receivership. The Supreme

Court disagreed, holding that FSLIC did not have the power as receiver to require parties to adjudicate their claims first through the FSLIC claims procedure. The issue presented in *Coit* is not before us.

Griffin nevertheless relies on *Coit* extensively in his appeal, primarily asserting that *Coit* stands for the proposition that state law applies to this case. *Coit* does not in any manner limit or affect the application of *D'Oench Duhme* to Griffin's claims nor the application of federal jurisdiction to Griffin's claims.

*Joint Venture,* 907 F.2d 1569, 1571 (5th Cir.1990); *Pernie Bailey Drilling Co. v. Federal Deposit Ins. Corp.,* 905 F.2d 78, 80 (5th Cir.1990) (per curiam). Since FSLIC was a party at the time of removal and since § 1819 applies retroactively to cure any possible defects at the time of FSLIC's removal, § 1819 unmistakably confers federal jurisdiction in this case. *Triland,* 884 F.2d at 207.

Griffin tries to distinguish *Triland* and its progeny on the ground that FSLIC was still a party at the time of appeal in *Triland* and here neither FSLIC or FDIC is still a party. For this reason, Griffin urges, amended § 1819 should not apply retroactively to his case. This fact does not negate the applicability of *Triland.* The power to remove is evaluated at the time of removal. The dismissal of one of the parties by the time of the appeal does not affect the propriety of removal. Congress enacted FIRREA to correct any possible jurisdictional defects existing at the time of removal; the fact that neither FSLIC or FDIC is a party at the time of appeal cannot defeat this intent.

Further, we can conclude that Congress did not intend the result Griffin urges. The policy reasons for insuring federal jurisdiction over cases involving the actions of failed thrifts continue when the FDIC is voluntarily dismissed as a party and the owner of the failed thrift's assets remains. A transferee from FSLIC or FDIC, as successor of their interests, is still entitled to the protection of federal courts applying *D'Oench Duhme,* even when FSLIC or FDIC is voluntarily dismissed. In sum, federal jurisdiction is proper in this case because according to repealed § 1730(k)(1) or amended § 1819, the case arises under federal law. Since federal question jurisdiction exists, federal law applies.

In the alternative, Griffin argues that FSLIC was not a proper party so FSLIC could not remove the case under repealed § 1730(k)(1) or current § 1819. Specifically, he contends that FSLIC did not own any cause of action against Griffin, having assigned the guaranty and the promissory note to First Gibraltar, and thus could not be a proper party.

Griffin had asserted four counterclaims against FDIC as receiver for First Texas and sought a money judgment. If he had succeeded, he would have become a general unsecured creditor of First Texas. The claims of the general unsecured creditors remained a liability of FDIC. Because of this liability, FDIC had the right to defend claims against First Texas. In *Pernie Bailey,* 905 F.2d at 80, we held that "[a]fter assignment, NCNB [the new owner] became the proper party to sue on the notes, but even so, FDIC is entitled to defend a claim of rescission. Although the notes were assigned before removal, the FDIC remained the proper party to defend all claims for damages against the closed bank." Since it had a right to defend, it was a proper party. *Id.*

## II. SUMMARY JUDGMENT

The conclusion that there is jurisdiction in the federal court leads us to consider the propriety of the district court's summary judgment in favor of First Gibraltar. We evaluate an award of summary judgment by reviewing the record under the same standards which guided the district court. *Brooks, Tarlton, Gilbert, Douglas & Kressler v. United States Fire Ins. Co.,* 832 F.2d 1358, 1364 (5th Cir.), *clarified on other grounds,* 832 F.2d 1378 (5th Cir.1987). According to Rule 56(c), we cannot affirm a summary judgment unless "we are convinced, after an independent review of the record, that 'there is no genuine issue as to any material fact' and that the movant is 'entitled to a judgment as a matter of law.'" *Id.* In a further delineation of the application of the Rule, the Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), said: "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." We

consider fact questions with deference to the nonmovant. We decide questions of law de novo.

Griffin first argues that he has created a genuine issue of fact as to whether First Gibraltar can recover under the guaranty. It is clear from the summary judgment record, however, that First Gibraltar has that capacity. The guaranty provides that it "shall inure to the benefit of all transferees, credit participants, assignees, and/or endorsees of Holder." First Gibraltar submitted an affidavit based on its records showing that it was the assignee of the guaranty and the promissory note. In addition, the acquisition agreement between FSLIC and First Gibraltar established the transfer of the guaranty and promissory note to First Gibraltar. Griffin offered no countering evidence to show that First Gibraltar cannot recover under the guaranty. Instead it advanced evidence undertaking to show only that First Gibraltar might not be a federal holder in due course. But proving holder in due course status is not important to whether First Gibraltar can sue under the guaranty. As an assignee and transferee of the guaranty and promissory note, First Gibraltar has the claim in any event.[3]

### A. *D'Oench Duhme*

One of Griffin's affirmative defenses, breach of agreement to fund, is based on an agreement not reflected in the loan documents. Only an *option* to provide financing appears in the bank's records. According to the *D'Oench Duhme* doctrine, Griffin therefore cannot assert the defense against First Gibraltar.[4]

*D'Oench Duhme,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), protects the FDIC and its assignees from unrecorded side agreements not reflected in the bank's records, like the alleged agreement to fund. It allows the FDIC to rely on the official bank records, to the exclusion of any extraneous matters, to set forth the rights and obligations of the bank and those to whom it lends money. The *D'Oench Duhme* requirement is now embodied in part in federal statute. 12 U.S.C. § 1823(e). Because the agreement to fund is not set out in the bank's written loan documents, Griffin is precluded from asserting the claim under the doctrine of *D'Oench Duhme.* Griffin asserts two separate analyses to avoid this result.

In his first analysis, he urges strenuously that *D'Oench Duhme* should not apply to the case against him. Griffin urges that the choice of law provisions of the contract between him and the bank preclude application of *D'Oench Duhme.* The loan documents do provide that Texas law will apply, and the choice of law provisions would be enforceable under Texas state law. Nevertheless, federal law still applies.

---

**3.** Whether First Gibraltar and the FDIC are federal holders in due course is an open question in this Circuit. The promissory note before us, acquired through a purchase and assumption agreement, has a variable interest rate; it is therefore non-negotiable. Tex.Bus. & Com. Code Ann. § 3.106 (1968). In *Sunbelt Savings, FSB Dallas, Texas v. Montross,* 923 F.2d 353, 356 (5th Cir.1991), a panel of this Circuit refused "to extend federal holder in due course status to the FDIC or its successor in cases in which it acquires non-negotiable instruments through purchase and assumption transactions." We recently agreed, however, to reconsider *Sunbelt* en banc. *Sunbelt Sav., FSB Dallas, Tex. v. Montross,* 932 F.2d 363 (5th Cir.1991). The question of federal holders in due course status in this situation is therefore unsettled at present.

Regardless of whether First Gibraltar is a holder in due course, it has a claim under the guaranty. It can make no difference that the outcome of this issue could, however, have an adverse affect on Griffin's affirmative defenses. If First Gibraltar and FDIC are federal holders in due course, Griffin could only assert real defenses, and not personal defenses, against First Gibraltar and FDIC. All of Griffin's defenses are personal. The so-called real defenses are infancy, incapacity, duress, illegality, fraud in factum, discharge in insolvency proceedings, or any discharge known to the holder in due course. Tex.Bus. & Com.Code Ann. § 3.305 (1968).

**4.** In the wrongful foreclosure affirmative defense, discussed in the next section, Griffin contends in part that First Texas agreed to bid at a specified price at the foreclosure sale and that First Texas breached this agreement. The agreement does not appear in the loan documents. It likewise fails according to *D'Oench Duhme.*

The choice of law provision in the guaranty addresses which state law applies when state law governs the case. Here, however, federal law provides the rule of decision. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Further, Griffin is essentially arguing that he can contract to have secret agreements enforceable against the FDIC and its assignees, if valid under Texas law. Private parties have no authority to override the *D'Oench Duhme* rule.

Griffin premises another argument on the contract choice of law provision. First Gibraltar engaged in allegedly inequitable conduct because it asserts *D'Oench Duhme* in this lawsuit, despite the contract choice of law provision. Griffin contends that First Gibraltar is thereby estopped from relying on *D'Oench Duhme.* There is no proof of inequitable conduct. Reliance on a well-established law cannot rise to the level of inequitable conduct. Further, as set out above, the contract only addresses which state law to apply when a state's law will provide the rule of decision. The assertion of controlling federal law overpowers this provision.

Griffin also makes the futile claim that asserting *D'Oench Duhme* in this situation impairs his constitutional right to contract. Applying *D'Oench Duhme* here does not violate the constitutional prohibition against impairment of the right to contract. The Contract Clause focuses on *retroactive state legislation. Keystone Bituminous Coal Assoc. v. De Benedictis,* 480 U.S. 470, 503, 107 S.Ct. 1232, 1251, 94 L.Ed.2d 472 (1987). Here we have a doctrine created by federal courts before the contract was formed. The claim is frivolous.

■ Griffin argues further that we cannot apply *D'Oench Duhme* for the benefit of First Gibraltar, a transferee of FSLIC. Specifically, he contends that Congress enacted a comprehensive scheme for regulating the banking and thrift system which preempts *D'Oench Duhme.* In 12 U.S.C. § 1823(e) Congress codified *D'Oench Duhme.* Griffin argues that the law is for the benefit only of the FDIC. It follows, Griffin urges, that the courts can only apply *D'Oench Duhme* and § 1823(e) to the FDIC and other entities included by Congress, not to assignees or transferees of FDIC or FSLIC. The contention fails.

First, § 1823(e) does not preempt *D'Oench Duhme.* Nor does it affect the vitality of the rule established in *D'Oench Duhme.* Rather, Congress intended that it serve as an adjunct to the federal statutory policy embodied in *D'Oench Duhme. Bell & Murphy and Assocs., Inc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 753 (5th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Federal Deposit Ins. Corp. v. McClanahan,* 795 F.2d 512, 516 (5th Cir.1986). Congress did not take away the power of the courts to apply *D'Oench Duhme* to entities not covered by § 1823(e). Second, this Court has established controlling precedent since the statutory enactment. We have specifically held that *D'Oench Duhme* can be applied for the benefit of an assignee or a transferee/purchaser from FDIC or FSLIC. *Porras v. Petroplex Sav. Ass'n,* 903 F.2d 379, 381 (5th Cir.1990); *Bell & Murphy,* 894 F.2d at 754.

■ Griffin also tries to avoid application of *D'Oench Duhme* by arguing that First Gibraltar failed to prove that *D'Oench Duhme* applies to Griffin's defenses for two reasons. One, First Gibraltar allegedly failed to prove that the four affirmative defenses are based on secret agreements. Two, First Gibraltar allegedly failed to prove that Griffin lent himself to a "scheme" to mislead the banking authorities.

The requirements of *D'Oench Duhme* are met. The agreements alleged here are unenforceable because they are not reflected in the bank's records. *Campbell Leasing, Inc. v. Federal Deposit Ins. Corp.,* 901 F.2d 1244, 1248 (5th Cir.1990). They need not be "secret," only outside the bank's records. In addition, an actual scheme is not required as Griffin alleges. All that is relevant is that the agreements are not in the files. Such unfiled agreements leave the regulators without warning that they exist. "Even borrowers who are innocent of any intent to mislead bank-

ing authorities are covered by the doctrine if they lend themselves to an arrangement which is likely to do so." *Id.* The alleged side oral agreements (i.e. agreement to form a partnership, agreement to fund subsequent loans, and the agreement to bid in the property at a specified price) all have the effect of misleading regulatory authorities.

Griffin sets out another line of argument to preclude our application of *D'Oench Duhme* by contending that the application of *D'Oench Duhme* improperly impairs a variety of his rights. First, Griffin alleges that the court's barring of his claims deprived him of his right to offset any amount he owes to First Gibraltar with what First Gibraltar, as successor to First Texas, owes him. Griffin also contends that he has an equitable lien on the assets of First Gibraltar, a lien improperly defeated by *D'Oench Duhme*. Both of these contentions are denied on their face by the Supreme Court's holding in *D'Oench Duhme*.

 Next, Griffin contends that the application of *D'Oench Duhme* to bar his claims is an unconstitutional taking. In essence he argues that the effect of the government's action in applying *D'Oench Duhme* is a taking of his defenses and right to offset. In addition, depriving him of a trial is a taking of his property without compensation. The argument fails. This is not a taking that deserves compensation because the taking is a consequence of his own failure to have his agreements written and part of the bank records. *See Campbell Leasing, Inc. v. Federal Deposit Ins. Corp.*, 901 F.2d 1244, 1248 (5th Cir.1990).

Griffin also contends that application of *D'Oench Duhme* violated his constitutional right to procedural due process. Due process is satisfied because he had the opportunity to familiarize himself with the general requirements of *D'Oench Duhme* and to comply with them.

## B. *State Law*

Griffin asserts three other affirmative defenses—breach of partnership duties, usury, and wrongful foreclosure—to defeat his liability under the guaranty. We find that these three defenses are not viable under Texas law. We therefore need not decide whether *D'Oench Duhme* would bar them. *See Federal Deposit Ins. Corp. v. Lattimore Land Corp.*, 656 F.2d 139, 146 (5th Cir.Unit B Sept. 1981).

### 1. Partnership

Griffin asserts that the loan documents establish that First Texas formed a partnership with him, Williams, and the joint venture. Griffin points to several sections of the loans documents as proof of partnership. His reading of the loan documents is highly imaginative. For example, as proof that the bank agreed to share 75% of the joint venture's losses, he cites the provision in the guaranty which limits the liability of the guarantors to 25% of the principal plus interest. Limiting the liability of the guarantors does not entail an agreement to share in the business losses of the joint venture.

 Griffin does, however, read correctly the Assignment of Net Profits Interest, but he cites it incorrectly as proof of the existence of a partnership. In the assignment, the joint venture agreed to give 40% of its profits to the bank. As a matter of Texas law, this cannot be evidence of a partnership. Section 7(4) of the Texas Uniform Partnership Act provides:

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

\* \* \* \* \* \*

(d) As interest on a loan, though the amount of payment vary with the profits of the business.

Tex.Rev.Civ.Stat.Ann. art. 6132b § 7(4)(d) (Vernon 1970). Therefore, the one piece of evidence that Griffin correctly interprets cannot be proof of partnership as a matter of law. In addition, there was no agreement to share losses. "While not conclusive, the absence of an express provision obligating the parties to share in any losses

is indicative that a partnership was not intended." *Gutierrez v. Yancey*, 650 S.W.2d 169, 172 (Tex.App.—San Antonio 1983, no writ).

■■■ The bank, the joint venture, Williams, and Worth stated in the loan documents that they formed no partnership. The parties' intent is the most important test in determining whether a partnership is formed. Thus in *Holman v. Dow*, 467 S.W.2d 547, 550 (Tex.Civ.App.—Beaumont 1971, writ ref. n.r.e.) the court found that no partnership was formed when parties agreed to share 40% of net profits and stipulated that it was not their intent to create a partnership. Of course, a statement that no partnership is formed cannot be conclusive proof that no partnership was formed. In *Howard Gault and Son, Inc. v. First Nat'l Bank*, 541 S.W.2d 235, 237 (Tex.Civ.App.—Amarillo 1976, no writ) the court held that a partnership was formed despite written agreement stating that the parties were not partners but landlord and tenant. Nevertheless, intent is clearly the major focus when deciding whether a partnership exists. *Voudouris v. Walter E. Heller & Co.*, 560 S.W.2d 202, 206 (Tex.Civ. App.—Houston [1st Dist.] 1977, no writ). Because the written documents reflect an intention not to form a partnership, because the parties agreed not to share profits, and because the assignment of profits is not evidence of an intent to form a partnership, we hold that it is clear that no partnership was formed.

## 2. Usury

Griffin also uses the assignment of net profits as proof of another affirmative defense, usury. He claims that First Texas charged usurious interest because in consideration of First Texas' making the 5.6 million dollar loan, the joint venture agreed to assign 40% of its net profits to First Texas. Griffin claims that this provision was usurious and that therefore First Gibraltar cannot recover against him as guarantor.

■■■ We can assume that the assignment of 40% of net profits to First Texas constituted usurious interest on the obligation.[5] But it makes no difference. Under Texas law a guarantor cannot assert any claim of usury in the underlying obligation. Usury is a personal defense and may not be asserted by a guarantor unless the contract with the guarantor also contains the usurious provision. *See Houston Sash and Door Co. v. Heaner*, 577 S.W.2d 217, 222 (Tex.1979); *Universal Metals and Mach., Inc. v. Bohart*, 539 S.W.2d 874, 879 (Tex.1976); *Nautical Landings Marina, Inc. v. First Nat'l Bank*, 791 S.W.2d 293, 298 (Tex.App.—Corpus Christi 1990, writ denied); 13 Tex.Jur.3d, Consumer and Borrower Protection Laws § 71 at 121–22 (1981). The contract with the guarantor did not contain the asserted usurious provision, the 40% assignment of profits.

■■■ A guaranty, however, may not be enforced if the underlying obligation is void for illegality. *Heaner*, 577 S.W.2d at 222; *Moore v. White Motor Credit Corp.*, 708 S.W.2d 465, 472 (Tex.App.—Dallas 1985, writ ref'd n.r.e.), *overruled on other grounds, Carpet Servs., Inc. v. George A. Fuller Co.*, 802 S.W.2d 343, 345–46 (Tex. App.—Dallas 1990, writ granted).[6] Texas provides by statute that if the interest charged by a lender exceeds twice the maximum rate allowed by law, then, among other penalties, the lender cannot collect

---

**5.** Texas law is unclear on whether this is a usurious obligation. Some courts have held that an obligation is not usurious if it is based on a contingency. *See, e.g., Beavers v. Taylor*, 434 S.W.2d 230 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.) (assignment of a percentage of gross sales is not usurious because a "loan is not usurious where the promise to pay a sum depends upon a contingency."). Other Texas courts have taken a different approach, holding that "[a] contract is usurious if there is any mode or contingency by which the lender could

receive more than the maximum rate of interest allowed by law." *Dixon v. Brooks*, 678 S.W.2d 728, 729 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

**6.** In *Moore,* the Dallas Court of Appeals held that a demand for interest at a usurious rate in a pleading was a "charging" of usurious interest forbidden by statute. The Dallas Court of Appeals overruled this holding in *Carpet Services,* a case which the Texas Supreme Court has agreed to consider.

the principal balance remaining from the borrower. Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(2) (Vernon 1987). It is unclear under Texas law whether an obligation to pay twice the interest allowed by law is, in any or all circumstances, void for illegality. 13 Tex.Jur.3d, Consumer and Borrower Protection Laws § 46 at 93–94 (1981). *Compare Heaner,* 577 S.W.2d at 222 (guarantor cannot assert defense of usury in underlying obligation because the usurious obligation is not void) *with Allee v. Benser,* 779 S.W.2d 61, 63 (Tex.1988) (portion of agreement imposing usurious interest "void") (quotations in original) *and Tri-County Farmer's Co-op v. Bendele,* 641 S.W.2d 208, 209 n. 2 (Tex.1982) (per curiam) ("A usurious contract is, of course, void as a matter of law.").

*Heaner* is a situation similar to the case before us. In it, the Texas Supreme Court held that the usurious obligation is not void for illegality. In that case, the plaintiff had charged and contracted for a usurious rate of interest in excess of twice that allowed by law. 577 S.W.2d at 221. The underlying note was held, however, not to be void for illegality. Therefore, the guarantor could not assert a usury defense based on the interest charged in the underlying obligation to which he was not a party. *Id.* at 222.

A Texas Court of Appeals court reached a similar result in *Moore,* 708 S.W.2d at 472. The lender in that case sued upon installment contracts. In its pleadings, it asserted a right to twice the interest rate allowed by law because of its interpretation of acceleration clauses. The court noted that a guarantor cannot assert the defense of usury unless the underlying obligation is void for illegality. It then concluded that the guarantor could not assert the usury defense and would be liable under the guaranty.[7] *See also Allee,* 779 S.W.2d at 63–64 (junior lienholder could not assert

defense of usury although interest charged was allegedly twice that allowed).

▇▇▇ We hold, therefore, that under Texas law, Griffin cannot assert the defense of usury in the promissory note to which he was not a party. This promissory note, possibly charging twice the interest allowed by law,[8] is not, in other words, considered to be void for illegality according to Texas law. When the Texas Supreme Court has used the term "void" in connection with usury, they seem to imply only that the usurious interest is void. The Texas courts have not held that underlying obligation itself is void for illegality. *Allee,* 779 S.W.2d at 63; *Bendele,* 641 S.W.2d at 209 n. 2. Instead, the Texas Supreme Court has enforced contracts charging twice the interest allowed by law against a junior lienholder and a guarantor. *Allee,* 779 S.W.2d at 63–64 (junior lienholder); *Heaner,* 577 S.W.2d at 222 (guarantor). The guarantor in *Heaner* and the junior lienholder in *Allee* were not allowed to assert the statutory penalties, including the forfeiture of the principal balance under Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(2).

We do not hold, as the district court did, that the savings clauses in the loan agreement prevent a finding of usury in the promissory note. "[T]he mere presence of a usury savings clause will not rescue a transaction that is necessarily usurious by its explicit terms." *Mack v. Newton,* 737 F.2d 1343, 1371 (5th Cir.1984) (applying Texas law). Certain savings clauses will, however, prevent a transaction from being usurious by its terms.

*In re Casbeer,* 793 F.2d 1436, 1446–47 & nn. 28–30 (5th Cir.1986), applied Texas law as to savings clauses to prevent usury. In *Casbeer,* the borrower assigned 100% of its net sales proceeds from certain properties to the lender, an assignment which ulti-

---

7. It is not entirely clear, however, that the court in *Moore* would reach a similar result in this case. The court placed importance on the fact that in the lender's pleadings, which asserted the usurious obligation, the lender had not sued the guarantor and that in the pleadings in which the lender did sue the guarantor, the lender was no longer requesting usurious interest. 708 S.W.2d

at 472 n. 6. Moreover, the installment contracts themselves were not usurious on their face.

8. It is not clear from the record that a charging of 40% of the net profits would be a charge of twice the legal rate. The record does not indicate what the joint venture's profits were, if any.

mately made the loan usurious. The savings clauses throughout the loan documents strictly limited the lender to receive only the maximum interest permitted by law. Any interest received exceeding the rate permitted by law was to be deemed a mistake and returned to the debtor. We remanded the case to allow a return of that portion of the assignment which violated Texas usury laws.

The loan documents here do not have the necessary savings clauses to prevent the assignment of net profits from being usurious on its face in the event that this is a usurious agreement.[9] Although the promissory note and guaranty have strict savings clauses similar to the ones in *Casbeer*, no savings clause appears in the separate document assigning net profits, as did the assignment in *Casbeer*. The documents therefore do not reflect an intent to return usurious amounts received under the assignment of net profits, as the parties intended to do in regard to net sales proceeds in *Casbeer*. Thus, the savings clauses themselves do not preclude a finding of usury, and we decide the usury issue without regard to savings clauses.

### 3. Wrongful Foreclosure

Griffin's third affirmative defense is wrongful foreclosure. Griffin asserts that First Texas, as a partner, had a duty to get the highest price at the foreclosure sale, a duty it allegedly breached. Since no partnership can be asserted against First Texas, Griffin cannot rely on such duty. Griffin also contends that First Texas did not give the required notice of acceleration. According to the loan documents, First Texas had to give Griffin, Williams, and the joint venture five days notice of acceleration. On October 9, 1986, First Texas gave notice of intent to accelerate on October 14, 1986 at noon. It gave notice of acceleration October 14th. Only if the 9th and 14th are both not counted is the notice irregular. There is no reason not to count either of the two dates, even though the acceleration officially occurred at noon on October 14th.

### III. SUMMARY JUDGMENT EVIDENCE

Griffin's last argument on appeal is that the district court should have struck some of First Gibraltar's summary judgment evidence because (1) First Gibraltar's affiants were not identified as witnesses in its answers to interrogatories, (2) the affidavit of First Gibraltar's vice-president, Timothy O'Connor, was not based on personal knowledge, and (3) O'Connor's affidavit contained hearsay.

 The district court properly considered the evidence. First Gibraltar had no duty to answer any interrogatories because none were served on it. The interrogatories addressed to First Texas did not apply to First Gibraltar. First Gibraltar was an intervener, did not substitute for First Texas, and did not adopt the interrogatories directed to First Texas. The O'Connor affidavit was a business record affidavit. It demonstrates O'Connor's personal knowledge to testify as a custodian of documents. Moreover, as senior attorney for First Texas, he had personal knowledge as to some of the statements in the affidavit. All hearsay statements come within the business record exception, and were entirely supported by business records attached to the affidavit.

### CONCLUSION

A thorough consideration of the entire record leads to the conclusion that the district court was correct in granting summary judgment in favor of First Gibraltar as to its claims against guarantor Griffin.

AFFIRMED.

---

**9.** *See* n. 8, *supra.*