ROGERS MANTESE & ASSOCIATES, P.C., Plaintiff,

v.

CORP ONE, INC., et al., Defendants.

Civil Action No. 12–CV–13321.

United States District Court, E.D. Michigan, Southern Division.

March 12, 2013.

---

Gerard V. Mantese, Ian M. Williamson, Mantese Assoc., Troy, MI, for Plaintiff.

Brian M. Akkashian, Paesano Akkashian, PC, Birmingham, MI, Gerard V. Mantese, Mantese Assoc., Brian C. Summerfield, Bodman, Troy, MI, for Defendants.

## OPINION AND ORDER GRANTING CORP ONE INC.'S MOTION TO REMAND

MARK A. GOLDSMITH, District Judge.

### I. INTRODUCTION

This case involves principally claims brought by a commercial tenant against its landlord and the successor holder of an assignment of rents. Although these purely state-law claims were asserted in a state court action, the case was removed to this Court because the tenant, Plaintiff/Counter–Defendant Rogers Mantese & Associates, P.C. (Rogers Mantese), had named the Federal Deposit Insurance Corporation (FDIC)—the receiver of the original holder of the assignment—as a defendant. As explained in greater detail below, the landlord's remand motion will be granted because no issues of federal law are raised and FDIC should never have been named in the state-court complaint.

### II. BACKGROUND

Rogers Mantese leased a portion of the premises at 210 East Third Street in Royal Oak, Michigan from Defendant/Counter–Plaintiff Corp One, Inc. (Corp One), the owner and landlord of the property. In 2009, Rogers Mantese began disputing the amounts Corp One was assessing for common area maintenance (CAM), for which Rogers Mantese was obligated under its lease. While that dispute remained unresolved, Corp One apparently defaulted in its obligations to its lender Fidelity Bank (Fidelity). This triggered Fidelity's demands, beginning in June 2011, to Rogers Mantese under the assignment of rents held by Fidelity, that Rogers Mantese make future rent payments to Fidelity.

Running into financial difficulties itself, Fidelity was closed by the Michigan Office of Financial and Insurance Regulation on March 30, 2012; on the same day, FDIC was appointed receiver and sold Fidelity's assets, including the Corp One loan and related security, to Huntington Bank.

On July 16, 2012, Rogers Mantese filed this action, with the following claims:

Count I: Breach of lease

Count II: Breach of contract

Count III: Fraud and misrepresentation

Count IV: Statutory and common law conversion

Court V: Tortious interference with a business expectancy Count VI: Tortious interference with a business relationship

Counts I through IV are directed at Corp One only and involve the above-described dispute over CAM expenses. Counts V and VI are directed at Fidelity and Huntington, although the former is not a Defendant in this case.[1] In these counts, Rogers Mantese claims that Fidelity and Huntington interfered with Rogers Mantese's business relationship with Corp One by wrongfully demanding from Rogers Mantese that it make its rent payments—or portions thereof—to Fidelity and/or Huntington, instead of to Corp One.

---

1. Rogers Mantese did not list Fidelity in the caption of the complaint, nor in the section of the complaint where parties are described. However, in Counts V and VI, Rogers Mantese complains of acts allegedly committed by "Fidelity/Huntington" and, in the prayers for relief at the conclusions of Counts V and VI, Rogers Mantese seeks judgment against "Fidelity/Huntington."

Notably, the complaint contains no allegations directed explicitly at FDIC. FDIC is mentioned by name only once in the complaint: "Defendant FDIC is the receiver for Fidelity Bank, and conducts business in Wayne County, Michigan." Compl. ¶ 7. Later in the complaint, Rogers Mantese references "the federal regulators" in an apparent reference to FDIC: "[Rogers Mantese] tried to resolve the dispute with Corp One and Fidelity and then Fidelity was taken over by the federal regulators, which further complicated resolution of the dispute involving which party [Rogers Mantese] should pay for rent." Compl. ¶ 27.

Corp One has filed a countercomplaint against Rogers Mantese, alleging that Rogers Mantese failed to make required CAM payments under the terms of the lease. The countercomplaint contains five counts:

Count I: Breach of lease

Count II: Breach of Rogers guaranty

Count III: Breach of Mantese guaranty

Count IV: Promissory estoppel

Court V: Unjust enrichment

Huntington has not asserted any claims against anyone in this matter; however, Corp One has sued Huntington in a separate action, now pending in state court, claiming the right to receive rent payments from Rogers Mantese and other tenants.

This case was removed on July 27, 2012 by FDIC. The basis for removal—and the sole asserted basis for federal court jurisdiction—is 12 U.S.C. § 1819(b)(2), which provides that federal question jurisdiction exists whenever FDIC is a party to a case, and that it may remove to federal court a case filed against it in state court (subject to an exception not invoked here). *See* 12 U.S.C. § 1819(b)(2)(A), (B).[2] Notably, FDIC points out in its notice of removal that it was never a proper Defendant in this matter because Rogers Mantese did not participate in the mandatory administrative claims review process of the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA). *See* 12 U.S.C. § 1821(d).[3] Shortly after removal, on August 13, 2012, the parties stipulated to the dismissal of FDIC from this action with prejudice—thus capping FDIC's presence in this case at 17 days. Order of Dismissal (Dkt. 8).

On September 27, 2012, Corp One filed a motion to remand, arguing that FDIC's dismissal from the case vitiates federal court jurisdiction. Rogers Mantese disagrees, arguing that federal court jurisdiction remains proper even after the dismissal of FDIC.

**2.** The pertinent part of the statute reads as follows:

(2) Federal court jurisdiction

(A) In general

Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States.

(B) Removal

Except as provided in subparagraph (D), [FDIC] may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90–day period beginning on the date the action, suit, or proceeding is filed against [FDIC] or [FDIC] is substituted as a party.

12 U.S.C. § 1819(b)(2).

**3.** Under § 1821(d), any party asserting a claim against a failed financial institution over which FDIC has been appointed receiver or against FDIC as receiver must exhaust an administrative claims review process prior to seeking judicial review, and courts lack subject matter jurisdiction over unexhausted claims. *See Fed. Deposit Ins. Co. v. Kane*, 148 F.3d 36, 38 (1st Cir.1998); *Tillman v. Resolution Trust Corp.*, 37 F.3d 1032, 1035–36 (4th Cir.1994); 12 U.S.C. § 1821(d)(13)(D).

Following a hearing on December 30, 2012, the Court ordered supplemental briefing on whether the naming of FDIC in the present complaint was improper under 12 U.S.C. § 1821(d)(13)(D). After a thorough review of the record and pertinent authorities, the Court will grant Corp One's motion to remand.

## III. ANALYSIS

■ As noted, 12 U.S.C. § 1819(b)(2) provides that federal question jurisdiction exists whenever FDIC is a party to a case, and authorizes FDIC to remove to federal court a case filed against it in state court. The principal issue dividing the parties is whether the Court must retain jurisdiction over the claims brought in this case even after dismissal of FDIC—the party whose involvement at the time of removal provided the sole basis for federal court jurisdiction.

Two views on this question have emerged. One is that district courts must, in all cases, retain jurisdiction over cases removed pursuant to § 1819(b)(2), even after FDIC has exited the case. Two circuits—the Second and Fifth—presently adhere to this view. *See Adair v. Lease Partners, Inc.*, 587 F.3d 238 (5th Cir.2009); *Fed. Savings & Loan Ins. Corp. v. Griffin*, 935 F.2d 691 (5th Cir.1991); *Fed. Deposit Ins. Corp. v. Four Star Holding Co.*, 178 F.3d 97 (2d Cir.1999).

The other view is that the district court has discretion not to retain jurisdiction over cases removed pursuant to § 1819(b)(2) after FDIC's exit from the case. One Circuit—the Third—presently adheres to this view. *See New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492 (3d Cir. 1996). The Sixth Circuit has not yet addressed the issue and, so far as this Court is aware, the issue has not been addressed by any district court within the Sixth Circuit.[4]

One leading case illustrating the view that the court must retain jurisdiction is *Griffin*. There, the Fifth Circuit held that "[t]he policy reasons for insuring federal jurisdiction over cases involving the actions of failed thrifts continue when the FDIC is voluntarily dismissed as a party and the owner of the failed thrift's assets remains. A transferee from [Federal Savings and Loan Insurance Corporation] or FDIC, as successor of their interests, is still entitled to the protection of federal courts ..." 935 F.2d at 696. The court's conclusion was premised on the traditional view that jurisdiction is determined as of the date of the filing of the complaint and, as of that time, FDIC was named as a defendant. *Id.* at 695.

The contrary view is exemplified in *New Rock*. There, the Third Circuit concluded that "the reasons for federal jurisdiction end" upon the dismissal of the Resolution Trust Corporation (RTC), the federal agency that acted as a receiver for failed thrift institutions:

---

4. District courts outside the Sixth Circuit and outside the three circuits to have addressed the issue vary in their approaches. *See, e.g., Fed. Deposit Ins. Corp. v. Mudd*, 704 F.Supp.2d 822 (N.D.Ill.2010) (concluding that continued jurisdiction is mandatory based on the weight of authority, but noting that the other view is the better one); *Mill Invs., Inc. v. Brooks Woolen Co., Inc.*, 797 F.Supp. 49 (D.Me.1992) (continued jurisdiction discretionary); *RADC/CADC Venture 2010–2, LLC v. Hunt Valley Props., LLC*, No. 10–CV–3395, 2012 WL 2921793 (N.D.Ga. Jul. 17, 2012) (continued jurisdiction mandatory); *Pena v. Puerto Rico*, No. 11–2127, 2012 WL 2525601 (D.P.R. Jun. 29, 2012) (continued jurisdiction discretionary); *Iberiabank v. Coconut 41, LLC*, No. 11–CV–321, 2012 WL 2345223 (M.D.Fla. Jun. 11, 2012) (continued jurisdiction mandatory); *Schwartz v. Indymac Fed. Bank*, No. 10–CV–00516, 2010 WL 5204305 (E.D.Cal. Dec. 15, 2010) (continued jurisdiction discretionary).

The role of federal jurisdiction in assisting the RTC in its management role and in disposing of thrift assets also indicates that once this has been accomplished, the reasons for federal jurisdiction end. Once the RTC has successfully managed a thrift and either restored it to solvency or transferred its assets to willing buyers, the agency's role—and hence the logic of jurisdiction—no longer exists. This reading indicates why the terms of the statute limit federal jurisdiction to cases in which the RTC "is a party." The RTC will presumably only be a party where it is engaged in active management and disposal of thrifts and thrift assets. The RTC will no longer be a party—and jurisdiction will no longer apply—once the RTC has managed a thrift and its assets have been disposed.

101 F.3d at 1500–1501. The court focused on the provision in FIRREA applicable to RTC, 12 U.S.C. § 1441a($l$)(1), now repealed, which is identical to the provision applicable to FDIC, 12 U.S.C. § 1819(b)(2). The court stressed that the statute stated that federal courts have jurisdiction so long as the federal agency "is" (present tense) a party to the action. *Id.* at 1499. Because it viewed the departure of RTC as stripping the court of jurisdiction under FIREAA, it determined that jurisdiction could be sustained only under principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. *Id.* at 1508.

The Court adopts the discretionary retention approach exemplified in *New Rock* over the mandatory retention approach exemplified in *Adair, Griffin,* and *Four Star Holding.* In support, the Court relies on the reasoning contained in the *New Rock* decision: (i) the express language of the statute (*i.e.,* providing for federal court jurisdiction when the agency "is" a party) evinces a Congressional intent to create a federal forum while the federal agency remains in the litigation, *see* 101 F.3d at 1499; and (ii) the rationale for federal jurisdiction under FIREAA no longer applies "once the RTC has managed a thrift and its assets have been disposed." *See id.* at 1500–1501. Moreover, the policy reason given by *Griffin* in support of the mandatory retention approach—protecting a transferee's right to assert federal defenses—is not a convincing reason justifying mandatory retention of jurisdiction. After a transfer of assets by FDIC and its exit from a case, the transferee may not choose to assert any federal defense or have any desire to remain in federal court—precisely the circumstances in this case, where Huntington does not urge retention of the case in federal court. Additionally, *New Rock's* discretionary retention approach "gives a district court the flexibility to maintain or decline to exercise jurisdiction depending on the facts of the individual case," *Pena,* 2012 WL 2525601, at *5, which is critically important here given the unique circumstances of the present case, as discussed below.[5]

5. The need for flexibility is illustrated in this case to address the impropriety of naming FDIC as a Defendant. Under the rationale of *Adair, Griffin,* and *Four Star Holding,* courts would be obligated to retain jurisdiction over cases in which FDIC was never a properly named party. This could lead to much mischief, by creating a way for a plaintiff, who is otherwise unable to file a federal court action, to maneuver his case into federal court by naming FDIC, even though there is no proper basis for doing so. It is simply not reasonable to conclude that Congress intended to mandate that federal courts retain cases that have no federal character when entry into federal court was based solely on an improper court action against a federal agency. Such a misuse of federal judicial resources cannot have been contemplated. *See New Rock,* 101 F.3d at 1507 n. 11 (recognizing that Congress acts "with an eye toward conserving judicial resources").

Pursuant to *New Rock*, the Court concludes that, with FDIC's dismissal, the Court no longer has jurisdiction under 12 U.S.C. § 1819(b)(2), and that its jurisdiction is limited to supplemental jurisdiction under § 1367, thereby allowing the Court to exercise its discretion whether to remand the case. Under § 1367(c):

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> > (1) the claim raises a novel or complex issue of State law,
> >
> > (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> >
> > (3) the district court has dismissed all claims over which it has original jurisdiction, or
> >
> > (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Here, the Court concludes that the exceptional circumstances of this case militate strongly in favor of remand. First, FDIC's appearance in this case was extremely brief. The matter was removed on July 27, 2012, and FDIC was dismissed a mere 17 days later on August 13, 2012. Although Rogers Mantese argues that FDIC might later re-enter this case, this argument is speculative and overlooks the fact that FDIC has been dismissed from this lawsuit with prejudice.

Second, this is a recently-filed case that has been pending before this Court for less than eight months; discovery has not commenced, a scheduling order has not been issued, and the Court has not issued any substantive decisions. In fact, the Court has had virtually no involvement with this case apart from the pending mo-

tion. The age of the case and level of court involvement are factors here that weigh strongly against retaining jurisdiction. *Cf. Destfino v. Reiswig,* 630 F.3d 952, 958 (9th Cir.2011) (affirming district court's decision not to remand after dismissal of FDIC because "the [c]ourt had invested considerable time and effort to decide lengthy motions on complicated pleadings").

Third, the primary policy rationale driving courts adhering to the mandatory retention approach is not operative in the present case. In particular, *Griffin* was concerned about preserving a federal forum for FDIC transferees to assert their federal defenses. *See Griffin,* 935 F.2d at 696 ("A transferee from FSLIC or FDIC, as successor of their interests, is still entitled to the protection of federal courts applying *D'Oench Duhme,* even when FSLIC or FDIC is voluntarily dismissed."). FDIC's transferee in the present case—Huntington—has filed a supplemental brief asserting arguments that, if found persuasive, would require remand. Because FDIC's transferee in the present case clearly has no interest in maintaining this action in federal court, the main policy reason supporting the mandatory retention approach is not entitled to substantial consideration here.

Fourth, this case lacks any federal character. At bottom, the case is a landlord/tenant dispute involving quintessential state-law claims. Four of the six claims in the complaint and all of the claims in the counter-complaint address the landlord/tenant relationship between Rogers Mantese and Corp One. They are state-law claims, raising no federal issue. The same is true of the two claims asserted by Rogers Mantese regarding the interference of Fidelity and Huntington with the Corp One relationship.[6]

---

**6.** In its motion papers, Rogers Mantese launches into a lengthy discussion of why it believes its claims against "Fidelity/Huntington" touch on federal law. *See* Resp. at 10–

**13.** Rogers Mantese's argument loses sight of the nature and scope of this case, as reflected in its own well-pled complaint. Citing the

■ Finally, and most importantly, remand is appropriate in this case because of what truly is a most extraordinary circumstance not present in any other case of which the Court is aware: In the present case, FDIC never should have been named as a Defendant in the first instance. Here, the Court concludes that Rogers Mantese was not entitled to file this action against FDIC because Rogers Mantese failed to exhaust the administrative claims review process codified at 12 U.S.C. § 1821(d)(13)(D).[7] *See Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 385–386 (6th Cir.2008) (joining sister circuits in interpreting § 1821(d) to require anyone bringing a claim against the assets of a failed bank held by FDIC as receiver, as well as any action based on an act or omission of FDIC as receiver, to first exhaust administrative remedies by filing an administrative claim under FDIC's administrative claims process). Rogers Mantese argues that its purported claim against FDIC is not subject to § 1821(d)(13)(D)'s exhaustion requirement for three main reasons, none of which is persuasive.

■ First, citing a Tenth Circuit case for the proposition that the mandatory ad-ministrative claims process of § 1821(d) applies only to "creditor and related claims arising *before* an institution enters receivership," *Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269, 1274 (10th Cir.1994) (emphasis added), Rogers Mantese argues that the purported claims asserted against FDIC in the present case "involve substantial post-receivership conduct" and are thus exempt from the administrative review process. Pl. Supp. Br. at 3 (Dkt. 27). However, as FDIC points out, the Sixth Circuit has rejected *Homeland Stores* for the proposition of law cited by Rogers Mantese. *See Village of Oakwood*, 539 F.3d at 387 ("The overwhelming majority of courts to address the issue have concluded that the administrative process applies to post-receivership claims.").

■ Second, Rogers Mantese argues that its claims against FDIC are exempt from § 1821(d)'s administrative claims process because its claims did not accrue until after the 90–day claim period had expired. However, Rogers Mantese's complaint contains no claims against FDIC. However, assuming that Rogers Mantese meant to assert Counts V and VI (tortious inter-

---

choice-of-law provision contained in the purchase agreement under which the Fidelity assets were transferred by FDIC to Huntington, Rogers Mantese states that federal law may be applicable to any claim by or against Huntington. However, Huntington has not asserted any claims against anyone in this case and, as Corp One correctly notes, this case does not involve any claims arising out of the purchase agreement. Nor has Huntington invoked any defense under federal law or expressed any desire to remain in federal court for the adjudication of this dispute. Accordingly, *Yousif v. Ocwen Mortgage Company*, 816 F.Supp.2d 463 (E.D.Mich.2010), a case on which Rogers Mantese relies where the complaint itself contained claims arising under federal law, is inapposite. The Court concludes that, with the dismissal of FDIC, this case lacks any meaningful connection to federal concerns.

7. Section 1821(d)(13)(D) provides:

> Except as otherwise provided in [§ 1821(d) ], no court shall have jurisdiction over—
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any .depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

As noted by the Ninth Circuit, "[t]he 'except as otherwise provided' language refers to the provision that allows courts jurisdiction after the administrative claims process has been completed." *Sharpe v. Fed. Deposit Ins. Corp.*, 126 F.3d 1147, 1156 (9th Cir.1997).

ference with a business expectancy/relationship) against FDIC, the claims accrued when Fidelity demanded that Rogers Mantese direct its rent payments to it and not Corp One (*i.e.,* the "interference" forming the basis for Rogers Mantese's claim against Fidelity), which occurred pre-receivership. *See generally* Compl. ¶¶ 26–27; Pl. Resp. to Mot. to Remand (Dkt. 20) at 1. *See Blazer Foods, Inc. v. Rest. Props., Inc.,* 259 Mich.App. 241, 673 N.W.2d 805, 813 (2003) ("[A] claim of tortious interference with a contract or a prospective economic advantage is complete upon a showing of the existence of a valid business relationship or the expectation of such a relationship between the plaintiff and some third party, knowledge of the relationship or expectation of the relationship by the defendant, and an intentional interference causing termination of the relationship or expectation, resulting in damages to the plaintiff."). Rogers Mantese's tortious interference claim against Fidelity, which forms the basis for Rogers Mantese's purported claim against FDIC, clearly occurred before FDIC was appointed Fidelity's receiver, and thus well before the running or expiration of the 90–day claim period.

■ Finally, Rogers Mantese's argument that its purported claim against FDIC is not subject to § 1821(d)'s administrative claims process because FDIC failed to notify Rogers Mantese of the administrative claims period is not supported by the weight of authority. *See, e.g., Freeman v. Fed. Deposit Ins. Corp.,* 56 F.3d 1394, 1402 (D.C.Cir.1995) ("[T]he

receiver's failure to mail the notice required under 12 U.S.C. § 1821(d)(3)(C) does not relieve the claimant of the obligation to exhaust administrative remedies, because the statute does not provide for a waiver or exception under those circumstances."); *Tri–State Hotels, Inc. v. Fed. Deposit Ins. Corp.,* 79 F.3d 707, 716 (8th Cir.1996) (agreeing with *Freeman*); *Meliezer v. Resolution Trust Co.,* 952 F.2d 879, 882–883 (5th Cir.1992) (failure to give proper notice does not excuse obligation to exhaust); *Intercontinental Travel Marketing, Inc. v. Fed. Deposit Ins. Corp.,* 45 F.3d 1278, 1285 (9th Cir.1994) (same).

Because FDIC should never have been named as a Defendant in this case, the Court concludes that remand is the most appropriate course of action.[8]

## IV. CONCLUSION

For the reasons stated above, Corp One's motion to remand (Dkt. 16) is granted. The matter is remanded to Wayne County Circuit Court.

SO ORDERED.

---

8. Even apart from the exhaustion issue, the complaint in this case contains no cognizable claim against FDIC. As discussed, the first four counts of the complaint are directed only against Corp One, and the remaining two counts are directed at Fidelity and Hunting-

ton; FDIC is scarcely mentioned in the complaint. Because the complaint contains no express claims against FDIC, this furnishes yet another reason why FDIC should never have been named a Defendant in this case in the first instance.