**CASA MONTE COMPANY, Appellant,**

v.

**Edward J. WARD et ux., Appellees.**

No. 10817.

Court of Civil Appeals of Texas.

Austin.

Jan. 25, 1961.

Rehearing Denied Feb. 15, 1961.

---

Louis H. Owen, III, Austin, for appellant.

James R. Sloan, Patrick W. Thompson, Austin, for appellees.

HUGHES, Justice.

Casa Monte Company, a corporation, sued Edward J. Ward and wife, Eleanor L. Ward, appellees, for a deficiency judgment, the amount sued for being the alleged difference between the amount for which certain real estate sold at a trustee's foreclosure sale under a deed of trust and the amount of the note secured by such deed of trust, both of such instruments having been executed by appellees and transferred to Casa Monte prior to such foreclosure by it.

Motions for summary judgment were filed by all parties. Appellees' motion was granted and appellant's motion does not appear to have been presented.

The judgment finally rendered was that Casa Monte take nothing by its suit.

■ A prerequisite to the recovery of a deficiency judgment is the establishment of the deficiency by a valid foreclosure sale. Bailey v. Block, 104 Tex. 101, 134 S.W. 323, Sullivan v. Hardin, Tex.Civ.App., Amarillo, 102 S.W.2d 1110.

■ The foreclosure sale in suit was invalid. It was made by W. H. Bullard, substitute trustee under the deed of trust, to First Austin Investment Corporation. At the time of such sale W. H. Bullard was president of the purchaser corporation, First Austin Investment Corporation, owned 90% of its stock, and was active in the management of its affairs.

■ The deed of trust, under which this sale was made, did not authorize trustee Bullard to sell to himself, this being the legal effect of such sale. Southern Trust and Mortgage Company v. Daniel, 143 Tex. 321, 184 S.W.2d 465. This authority as well as Parks v. Worthington, 101 Tex. 505, 109 S.W. 909, hold that sales made by a trustee under a deed of trust to himself are voidable at the election of maker of the note.

Appellant concedes the foregoing statements of law to be correct, but contends that the purchaser, First Austin, had "a beneficial interest in the indebtedness secured by the property sold." Appellant here relies on the rule that "* * * the cestui que trust under a mortgage, and who is also a trustee of the power to sell, holds the power coupled with an interest, and may purchase the property at a sale otherwise fairly made * * *." Scott v. Mann, 33 Tex. 725, 726.

■ The only fact relied on to establish beneficial interest held by the purchaser, First Austin, in the notes owned by Casa Monte is that the trustee, W. H. Bullard, was president of the Casa Monte Corporation as well as president of First Austin.

The note was owned by Casa Monte Corporation. It was not owned by the purchaser, First Austin, and First Austin is not shown to have had any beneficial interest in it. The rule relied on does not apply.

■ Further seeking to sustain validity of the sale, appellant states that an inference may be properly drawn from facts in the record that First Austin in purchasing the property at the trustee's sale acted as the agent of Casa Monte.

A sale to Casa Monte or its agent would, other objections aside, be valid. If such an inference of agency can be properly drawn from the record, then an issue of fact preventing rendition of a summary judgment

is present. Appellant cites us to these facts as supporting the inference of agency:

"1. Casa Monte Company, Plaintiff, was not represented at the trustee's sale, except by W. H. Bullard, its President, who acted as trustee;

"2. no bid was entered at the sale in the name of Casa Monte Company, even though its President conducted the sale as trustee and was qualified and obligated to bid on behalf of Plaintiff in order to protect its interest in the note;

"3. Casa Monte Company and First-Austin Investment Corporation are closely related corporations, having the same individuals as president and secretary;

"4. First-Austin Investment Corporation is a real estate sales organization;

"5. no action was taken to collect the deficiency due on the note until after the property had been sold and had failed to bring a sufficient price to defray the expenses of sale and off-set the balance due on the note."

The affidavit of trustee Bullard is unequivocal in its statements that First Austin purchased and paid for the property at the trustee's sale and subsequently sold it to an assumed innocent purchaser.

We do not believe the circumstances relied upon by appellant are fairly capable of casting the inference which appellant seeks. While such circumstances might be consistent with the relationship of principal and agent as between Casa Monte and First Austin, they do not in themselves contain any suggestion of the existence of such relationship.

If First Austin had purchased for Casa Monte, the normal proof of this would have been for the deed to have been made to Casa Monte.

If First Austin had purchased for Casa Monte, the truthful sworn statement of its president would have been to such effect, and not that First Austin bought, paid for and sold the property.

■ Relying upon the rule, stated in Maupin v. Chaney, 139 Tex. 426, 163 S.W. 2d 380, that where there is an invalid sale under a deed of trust but the purchaser wrongfully took possession of the property and sold it to another, the mortgagor, in a suit for deficiency judgment, should be given credit for the reasonable market value of his equity, appellant contends that summary judgment was improper since an issue of fact was presented as to the value of the property, or appellees' equity in it.

The foreclosure in suit was upon a second lien note upon which there was then due $3,674.43. Trustee's sale was November 4, 1958, at which the property was struck off to First Austin for $2,000, subject to a first lien of $13,614.16. On February 1, 1959, First Austin sold the property for a total consideration of $19,500. We quote from the affidavit of trustee Bullard regarding this transaction:

"The property at 5719 Louise Lane, Austin, Texas, was sold by First-Austin Investment Corporation on the 1st day of February, 1959, to Rolf A. Normann and wife, Alida M. Normann, for a total consideration of $19,600.00 from which First-Austin Investment Corporation received $2,500.00 cash. One hundred dollars was credited to purchaser for installation of a back door and $17,000.00 was agreed to be paid by purchaser on an installment sales contract. Said installment sale contract, in accordance with customary business procedures, was discounted ten per cent (10%) in establishing its value to the company, giving a value for said contract of $15,300.00 and making the total consideration received by First-Austin Investment Corporation the sum

of $17,900.00. The total cost to First-Austin Investment Corporation at the time said contract was finally consummated consisted of the following: $2,000.00 cash paid for purchase of the property at the trustee's sale; $175.00 paid for re-installation of the air-conditioning equipment; $100.00 credit given for installation of a back door; $980.00 commission paid and sales expense; $702.00 back payments to First Federal Savings and Loan Association of New Braunfels paid at the time said property was purchased; $234.60 for two months' payments to First Federal in the amount of $117.30; $250.00 paid to First Federal for two months' payments in the amount of $125.00, making the total cost $4,441.60 plus $12,842.94 assumed by the purchaser as the balance of the first lien to be paid to First Federal Savings and Loan Association of New Braunfels for a total cost of $17,284.54. Subtracting this figure from $17,900.00 received by First-Austin Investment Corporation on the sale of the property we find that First-Austin Investment Corporation had a profit on sale of $615.46. A copy of the contract for sale of said property is attached to this affidavit and made a part hereof for all purposes.

"Through purely fortuitous circumstances the purchaser under the contract of sale was able in March of 1958 to pay the entire balance due under the installment contract and obtained a deed from First-Austin Investment Corporation. As a result of this payment First-Austin Investment Corporation received an additional profit of $1,700.00 which had been discounted from the amount of the contract of sale. However, this profit is not properly chargeable to the sale of the property but rather should be charged to a profit on the contract of sale."

This sale, we believe, made within three months of the sale by the trustee conclusively establishes the reasonable market value of the property for the purpose of this suit.

We know, as a matter of common knowledge, that, under normal conditions, the value of residential property does not have great fluctuation in a period of three months. The value of the property, measured by the sale of it to Mr. and Mrs. Normann, is greater than the indebtedness against it at the time of the trustee's sale. This, under the rule pressed upon by appellant, precludes the propriety of a deficiency judgment.

While the property sold at the trustee's sale for about $1,600 less than was due on the second lien note, and Mr. Bullard calculates the profit on the sale from First Austin to the Normanns to be only $615.46, or about $1,000 less than the deficiency reflected by the trustee's sale, he does this by arbitrarily discounting the Normanns' deferred payment of $17,000 by 10%. This may be, as Mr. Bullard states, customary business procedure, but, in our opinion, it is not a proper legal criterion for evaluating the note or the property.

When this $1,700 additional profit is added to the Normann sale, the alleged deficiency disappears.

The judgment of the Trial Court is affirmed.

Affirmed.