WEAVER V. SNB 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 



ON REMAND


 




NO. 3-88-242-CV





OWEN G. WEAVER AND JOHNNIE N. WEAVER,




 APPELLANTS


vs.





SOUTHWEST NATIONAL BANK,


FEDERAL DEPOSIT INSURANCE CORPORATION,


AS RECEIVER OF SOUTHWEST NATIONAL BANK, ACTING


IN ITS CORPORATE CAPACITY, AND TEXAS BANK-SOUTHWEST,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT



NO. 406,504, HONORABLE JON N. WISSER, JUDGE PRESIDING



 




 Southwest National Bank (SNB), appellee, (1) brought suit against Owen G. and
Johnnie N. Weaver (collectively, the "Weavers"), appellants, to recover a deficiency judgment
on two promissory notes following the non-judicial foreclosure sale of two fourplexes pursuant
to deeds of trust executed by the Weavers. The case was tried to a jury, which found damages
of $113,526.46 in favor of SNB. The trial court rendered judgment for SNB. The Weavers
perfected this appeal. We will affirm.

 On appeal the Weavers assert five points of error. In a previous unpublished, per
curiam opinion, this Court overruled one of the points of error and declined to address the
remaining four points on procedural grounds. The Texas Supreme Court reversed our judgment
and remanded the cause to this Court for consideration of the remaining four points of error. 
Weaver v. Southwest Nat'l Bank, 813 S.W.2d 481 (Tex. 1991).

 In their other four points, the Weavers argue that the trial court erred (1) in
granting judgment for SNB because the jury found that SNB materially breached its obligations
under the loan documents; (2) in granting judgment for SNB because the jury found that SNB did
not act in good faith in its dealings with the Weavers; (3) in denying a new trial on the Weavers'
counterclaim because there was a conflict between the jury's answers to certain questions; and (4)
in disregarding certain jury findings that were supported by probative evidence.


STATEMENT OF FACTS


 SNB loaned the Weavers $208,000 in November 1984 and loaned an additional
$180,000 to Owen G. Weaver in June 1985. These loans, secured by deeds of trust on two lots,
represented construction financing for two fourplexes constructed by the Weavers. The Weavers
eventually defaulted on the loans, whereupon SNB instituted non-judicial foreclosure proceedings
pursuant to the deeds of trust. At the foreclosure sale, SNB bid $170,000 for each lot and paid
a total of $340,000 for both properties. SNB's bid reflected what it thought the fair market value
of the property was as of the date of foreclosure.

 After applying the proceeds of the sale against the amounts remaining due on each
of the notes, SNB brought suit against the Weavers for the deficiency. The Weavers
counterclaimed, alleging that SNB had committed breach of contract, fraud, negligence, breach
of fiduciary duty, and violations of the Deceptive Trade Practices Act (DTPA), Tex. Bus. & Com.
Code Ann. §§ 17.41-.63 (1987 & Supp. 1991). The jury found that, at the time of trial, the
Weavers still owed SNB $73,530.68 on the $208,000 note, and that Owen G. Weaver still owed
SNB $39,995.78 on the $180,000 note.

 The jury also found that SNB had materially breached its obligations under the
notes, renewals, and deeds of trust; that SNB failed to act in good faith; and that SNB's failure
to act in good faith was the proximate cause of damages to the Weavers. However, the jury found
that the Weavers had suffered no monetary damages as a result of SNB's conduct. The trial court
disregarded the adverse jury findings and rendered judgment in favor of SNB.


BREACH OF CONTRACT


 In their first and fifth points of error, the Weavers argue that the trial court erred
in granting judgment for SNB by disregarding the jury's finding that SNB materially breached its
obligations under the loan documents. A trial court may disregard any jury finding on a question
that has no support in the evidence or a question that is immaterial. Tex. R. Civ. P. 301; Eubanks
v. Winn, 420 S.W.2d 698, 701 (Tex. 1967); C & R Transp., Inc. v. Campbell, 406 S.W.2d 191,
194 (Tex. 1966); Brown v. Armstrong, 713 S.W.2d 725, 728-29 (Tex. App. 1986, writ ref'd
n.r.e.). The Weavers point to five instances in the record that allegedly support the jury's finding
of material breach by SNB: (1) SNB bid substantially less than fair market value for the property
at the foreclosure sale; (2) SNB failed to advertise the foreclosure sale as required by the deeds
of trust; (3) SNB conducted a void foreclosure sale through an improperly appointed substitute
trustee; (4) SNB took possession of the mortgaged property prior to foreclosure; and (5) SNB
failed to give the Weavers credit for $17,000 of the foreclosure sale proceeds. Because the jury
question, as worded, did not identify any particular "material breach" by SNB, we will address
each of the circumstances asserted by the Weavers.


1. Failure to Advertise

 The deeds of trust in issue contained the following clause:


[A]nd after advertising the time, place and terms of the sale of the above described
and conveyed property, then subject to the lien hereof, and mailing and filing
notices as required by section 51.002, Texas Property Code, as then amended
(successor to article 3810, Texas Revised Civil Statutes), and otherwise complying
with that statute, the Trustee shall sell the above described property 

. . . .


(Emphasis added.) The Weavers do not argue that SNB failed to comply with the provisions of
section 51.002; rather, they assert that SNB's posting of a notice at the county courthouse
announcing the time, place, and terms of the upcoming public auction of the mortgaged property
was insufficient to satisfy the requirement in the deeds of trust that the sales be "advertised." The
Weavers argue that the phrase "after advertising the time, place and terms of the sale" required
SNB to advertise the sale in a newspaper or the like. We disagree.

 If the language of a contract is unambiguous, then a court will construe the
contractual language as a matter of law. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). 
Whether the language of a contract is ambiguous is itself a question of law for the court to decide
by looking at the contract as a whole in light of the circumstances present when the contract was
made. Id. at 394. The Texas Supreme Court has adopted the following definition of "advertise"
from Black's Law Dictionary (5th ed. 1979):


 To advise, announce, apprise, command, give notice of, inform,
make known, publish. On call to the public attention by any means whatsoever. 
Any oral, written, or graphic statement made by the seller in any manner in
connection with the solicitation of business and includes, without limitation because
of enumeration, statements and representations made in a newspaper or other
publication or on radio or television or contained in any notice, handbill, sign,
catalog, or letter. . . .


Smith v. Baldwin, 611 S.W.2d 611, 614-15 (Tex. 1980). Although the term "advertise" is very
broad, the Weavers have failed to convince this Court that it is ambiguous. Nothing in the
language of the deeds of trust or the record indicates that at the time the parties executed the deeds
of trust they intended the term to be read in a narrow sense. There is no evidence, for example,
that SNB was obligated to engage in one type of advertising over another. The Weavers' bare
assertion that a newspaper advertisement was required is not supported by the record. The intent
of the parties must be taken from the agreement itself, not from the parties' present interpretation. 
First City Nat'l Bank v. Concord Oil Co., 808 S.W.2d 133, 137 (Tex. App. 1991, no writ).

 Therefore, we conclude as a matter of law that the term "advertise" is not
ambiguous and should be construed broadly. Under such a construction, which we believe
comports as well with common sense, the term "advertise" clearly includes the posting of notices
in public places. Thus, SNB complied with the "advertisement" requirements of the deeds of trust
by posting notices of the upcoming sale at the county courthouse.


2. Taking Possession of Property

 As another basis for the jury's material-breach finding, the Weavers point to
evidence that prior to foreclosure, SNB collected rents from tenants on the mortgaged properties,
entered into leases for the mortgaged properties, and had the properties mowed. This evidence,
however, provides no support for the jury finding, because these actions by SNB were expressly
permitted by the deeds of trust:


 That in the event Grantors [the Weavers] shall fail to keep the
improvements on the property hereby conveyed in good repair and condition, . .
. then Beneficiary [SNB] may, at his option, . . . make such repairs . . . on said
property . . . .


 . . . .


 [I]n the event of any default in the payment of said note or
hereunder, Beneficiary, his agent or representative, is hereby authorized, at his
option, to collect said rents, or if such property is vacant to rent the same and
collect the rents . . . .


It is undisputed that the Weavers defaulted on their payments before SNB entered into leases,
collected rents, or had the property mowed. Thus, we conclude as a matter of law that these
actions by SNB did not constitute material violations of the deeds of trust.


3. Failure to Give Credit

 The Weavers also assert that SNB breached the loan documents by failing to give
them credit on their indebtedness for $17,000 of the proceeds from the foreclosure sale. This
assertion also lacks merit. A reading of the pleadings on which SNB went to trial and the damage
amounts found by the jury shows that proper credit was given for the $17,000.


4. Appointment of Substitute Trustee and Inadequate Consideration

 The Weavers also argue that SNB breached its contractual obligations by bidding
substantially less than fair market value for the properties at the foreclosure sale. The rule is well
established, however, that mere inadequacy of consideration is not grounds for setting aside a
trustee's sale if the sale was legally and fairly made. See American Sav. & Loan Ass'n v. Musick,
531 S.W.2d 581, 587 (Tex. 1975); Nautical Landings Marina, Inc. v. First Nat'l Bank, 791
S.W.2d 293, 298-99 (Tex. App. 1990, writ denied). There must be evidence of irregularity,
though slight, which must have caused or contributed to cause the property to be sold for a grossly
inadequate price. Musick, 531 S.W.2d at 587; Pentad Joint Venture v. First Nat'l Bank, 797
S.W.2d 92, 95-96 (Tex. App. 1990, writ denied). As evidence of irregularity, the Weavers point
to evidence that SNB improperly appointed the substitute trustee who conducted the foreclosure
sale: the substitute trustee was not formally appointed until a few days after the notices of
foreclosure sale were sent.

 Even if we assume, however, that the foreclosure sale conducted by the substitute
trustee was invalid, we conclude that SNB was not precluded from suing the Weavers for a
deficiency judgment. First, there is no evidence that the allegedly improper appointment of the
substitute trustee caused the property to be sold at a grossly inadequate price. Further, in Tarrant
Savings Association v. Lucky Homes, Inc., 390 S.W.2d 473, 475 (Tex. 1965), the Texas Supreme
Court rejected the contention that a prerequisite to the recovery of a deficiency judgment is the
establishment of the deficiency by a valid foreclosure sale:


 The basic error committed by the Court of Civil Appeals lies in the
premise upon which it constructed its opinion. That court accepted as sound the
rule that "[a] prerequisite to the recovery of a deficiency judgment is the
establishment of the deficiency by a valid foreclosure sale", citing Casa Monte Co.
v. Ward, Tex. Civ. App., 342 S.W.2d 812, no writ hist., and Sullivan v. Hardin,
Tex. Civ. App., 102 S.W.2d 1110, no writ hist. This premise from which the
Court of Civil Appeals reasoned is clearly erroneous. Under Maupin v. Cheney,
139 Tex. 426, 163 S.W.2d 380, if the sale is valid the mortgagee is entitled to
judgment for the amount of the note, interest and attorney's fees, less the amount
received at the trustee sale and other legitimate credits. If the sale is invalid and
title to the property has passed to a third person or the property has been
appropriated to the use and benefit of the mortgagee, the mortgagor is entitled to
have the reasonable market value of the property credited on the note.


 Therefore, even if we assume for the sake of argument that the foreclosure sale in
the present case was invalid, based on Lucky Homes we reject the Weavers argument that SNB
is precluded from recovering a deficiency judgment. In such an event the Weavers would only
be entitled to have the reasonable market value of the property at the time of foreclosure credited
on the note. See Crow v. Heath, 516 S.W.2d 225, 228-29 (Tex. Civ. App. 1974, writ ref'd
n.r.e.) (holding that lack of requisite notice of intention to accelerate the indebtedness, coupled
with the inadequacy of consideration, was sufficient to set the foreclosure sale aside; therefore,
debtor entitled to a credit on the note in the amount of the reasonable market value of the
property).

 In the present case, however, that argument fails as well. SNB established its case
for a deficiency judgment by introducing the promissory notes executed by the Weavers and
showing a proper credit of the proceeds received from the sale of the property securing the notes. 
The burden then shifted to the Weavers to show some reason for denying the recovery sought by
SNB. See Lucky Homes, 390 S.W.2d at 474. Even if we assume that the Weavers were entitled
to a credit for the reasonable market value of the property, the Weavers failed to obtain a jury
finding as to the reasonable market value of the property at the time of foreclosure and have,
therefore, waived that defense. Tex. R. Civ. P. 279.

 Moreover, even if it could be said that one or more elements of an "invalid
foreclosure sale" defense had been submitted to and found by the jury, the omitted element
(reasonable market value of the property) would be deemed found to support the judgment if there
is factually sufficient evidence to support such a finding. See Tex. R. Civ. P. 279. The Weavers
did not challenge the sufficiency of the evidence to support such a deemed finding, and so have
waived any such complaint. In any event, there was conflicting evidence as to the reasonable
market value of the property at the time of foreclosure; after reviewing the record, we conclude
that there was factually sufficient evidence to support a deemed finding that SNB's bid represented
the reasonable market value of the property. This conclusion is further support by the jury's
finding that the Weavers suffered no monetary damages as a result of SNB's conduct.

 Therefore, based on the foregoing discussion, we conclude that there was no
evidence that SNB breached its obligations under the loan documents by failing to advertise the
foreclosure sale; by failing to give proper credit for the foreclosure-sale proceeds; or by taking
possession of the property prior to foreclosure. Further, even if we assume that SNB breached
its obligations by improperly appointing a substitute trustee, we conclude that such a finding was
immaterial because:  (1) the Weavers failed to obtain a jury finding that the reasonable market
value of the property was more than the amount bid by SNB at the foreclosure sale, thereby
waiving that defense; (2) the Weavers failed to challenge the sufficiency of the evidence to support
a deemed finding that the reasonable market value was the amount bid by SNB, thereby waiving
that complaint; and (3) such a deemed finding is supported by factually sufficient evidence.



DUTY OF GOOD FAITH



 In their second and fifth points of error, the Weavers assert that the trial court erred
in granting judgment for SNB by disregarding the jury's finding that SNB failed to act in good
faith in its dealings with the Weavers. In support of their argument, the Weavers rely on both a
common law duty of good faith and fair dealing and the requirement of good faith found in Tex.
Bus. & Com. Code Ann. §§ 1.203 & 1.201(19) (1968).

 Generally, a duty of good faith and fair dealing does not exist in Texas unless
created by either express contractual language or unless a special relationship exists marked by
shared trust or an imbalance in bargaining power. Federal Deposit Ins. Corp. v. Coleman, 795
S.W.2d 706, 708-09 (Tex. 1990); Arnold v. National County Mut. Fire Ins. Co., 725 S.W.2d
165, 167 (Tex. 1987); Herndon v. First Nat'l Bank, 802 S.W.2d 396, 399 (Tex. App. 1991, writ
denied); Nautical Landings Marina, 791 S.W.2d at 299. In the present case, there is no evidence
of express contractual language creating a duty of good faith; nor is there any evidence of a
special relationship between the Weavers and SNB. Indeed, the relationship of mortgagor and
mortgagee ordinarily does not involve a duty of good faith. Coleman, 795 S.W.2d at 709;
Nautical Landings Marina, 791 S.W.2d at 299. Therefore, we conclude that SNB did not owe
a common law duty of good faith and fair dealing to the Weavers.

 The Weavers also rely on section 1.203 of the Texas Uniform Commercial Code
(the "Code"), which states:  "Every contract or duty within this title imposes an obligation of good
faith in its performance or enforcement." Tex. Bus. & Com. Code Ann. § 1.203 (1968). A
critical question, therefore, is whether the transaction between the Weavers and SNB was
governed by the Code. The Weavers argue that the loan documents in this case include
instruments governed by chapters 3 and 4 of the Code.

 After examining chapter 4 of the Code, we conclude that it is inapplicable to the
present case. As for chapter 3, it applies only to "instruments" that are "negotiable." See Tex.
Bus. & Com. Code Ann. § 3.104 (1968). But see § 3.805. In order to be negotiable, the written
instrument must contain a promise to "pay a sum certain in money." See Code § 3.104(a)(2). 
An amount payable is a "sum certain" even if it is to be paid with stated interest. See § 3.106. 
A note with a variable interest rate, however, has been held not to be a promise to pay a "sum
certain" and, therefore, not to be a "negotiable instrument" within the meaning of chapter 3 of the
Code. See Brazos River Auth. v. Carr, 405 S.W.2d 689, 694-95 (Tex. 1966); Dillard v. NCNB
Tex. Nat'l Bank, 815 S.W.2d 356, 360 (Tex. App. 1991, no writ); Lexington Ins. Co. v. Gray,
775 S.W.2d 679, 682 (Tex. App. 1989, writ denied); see also Federal Sav. & Loan Ins. Corp.
v. Griffin, 935 F.2d 691, 697 n.3 (5th Cir. 1991); In re Gas Reclamation, Inc. Securities
Litigation, 741 F.Supp. 1094, 1102-03 (S.D.N.Y. 1990), appeal dismissed, 924 F.2d 448 (2d Cir.
1991) (applying Texas law).

 The loan documents in the present case provide for a variable interest rate:


[E]qual to the Prime Rate (as defined by First City National Bank of Austin,
Texas) from time to time announced or posted by First City National Bank of
Austin, Texas plus Two Percent (2%) per annum, but not to exceed the greater of: 
(1) the quarterly ceiling from time to time in effect under Article 5069-1.04,
Vernon's Annotated Texas Statutes, as published by the Office of the Consumer
Credit Commissioner, or (2) the maximum rate from time to time allowed under
federal law. The applicable interest rate shall be adjusted as of the date of each
change in such Prime Rate during the term of this loan . . . .


Accordingly, chapter 3 of the Code does not apply to the loan documents in the present case. 
Therefore, we conclude that the transaction between the Weavers and SNB was governed neither
by the Code as a whole nor by the good-faith provision contained in section 1.203. Having
determined, as a matter of law, that SNB owed no duty of good faith and fair dealing, we
conclude that the trial court properly disregarded the jury's findings that SNB breached such a
duty and that such breach was the proximate cause of damages to the Weavers.


CONCLUSION


 Based on our foregoing discussion, we overrule the Weaver's first, second, and
fifth points of error. Further, based on our holding that SNB did not owe a duty of good faith to
the Weavers, we also overrule their third point of error based on allegedly irreconcilable jury
findings. Finally, because we overruled the Weaver's fourth point of error in our previous
opinion, we affirm the judgment of the trial court.



 

 J. Woodfin Jones, Justice

[Before Justices Powers, Jones and B. A. Smith]

Affirmed on Remand

Filed: January 8, 1992

[Do Not Publish]
1. Also present as appellees in this appeal are two intervenors: (1) the FDIC, as Receiver
for SNB, which was declared insolvent after this appeal was perfected; and (2) Texas Bank-Southwest, to which the FDIC conveyed various assets of SNB, including the promissory
notes in question.