**Charles C. DODSON, Appellant,**

v.

**G.L. SIZENBACH, et al., Appellee.**

**No. A14–82–433CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 20, 1983.

Charles C. Dodson, Michael R. DeBruin, Law Offices of Donald L. Martin, Houston, for appellant.

William E. Wylie, Brown & Wylie, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and DRAUGHN and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is a suit based on breach of a written contract. Charles C. Dodson appeals from a judgment against him in favor of G.L. Sizenbach and Douglas Aycock, appellees. The jury answered special issues against Dodson both on the issue of fraud and on the issue of breach of contract. The jury found that appellant had caused $103,637.92 in damages to appellees, and that appellees were also entitled to $20,000.00 exemplary damages. The court entered a judgment for these amounts, plus interest and attorneys fees.

Appellant brings two grounds of error. First, he claims that the trial court erred in denying appellant's motion for instructed verdict on the issue of fraud because the evidence was insufficient to support a finding of fraud. Second, he claims that the trial court erred in denying appellant's motion for instructed verdict on the issue of liability under the contract of March 14, 1973 because that liability was discharged as a matter of law. We overrule these grounds of error and affirm.

The evidence at trial showed that in January of 1973 Dodson went to Sizenbach's office to discuss an investment opportunity in a condominium hotel which was to be built adjacent to the Astrodome. Two corporations were to be formed to develop and manage the project, and Dodson had an opportunity to acquire 10% of the stock in each.

To acquire the interest Dodson had to loan $60,000 to the developer, Sam Drake. Dodson asked Sizenbach to co-sign a note for $60,000 in exchange for one-half of Dodson's interest in the corporations. Sizen-

bach discussed the proposition with Aycock, who asked others about the soundness of the investment. The two of them agreed to co-sign the note with Dodson. Additionally, they agreed to pledge 11½ acres of land they owned as security for the note.

On March 15, 1973 Dodson, Sizenbach and Aycock executed a written contract dated March 14, 1973 which set out their agreement. This contract recites, in relevant part:

(1) In consideration of co-signing with Dodson a promissory note in the amount of $60,000.00 at the Merchants Park Bank, Houston, Texas, said note *to be repaid in full, including interest, by Dodson at the time of or before the disbursement of first development profits proceeds accured* to Plaza Elegante Condominium Development Corporation, Dodson hereby assigns his option to acquire a five percent (5%) interest in Plaza Elegante Condominium Development Corporation and Plaza Elegante Management Corporation to Sizenbach and Aycock (2½ % each person .... (4) It is also understood that in the event above mentioned corporation are not formed Dodson will be held blameless but the *promissory note will still be his obligation, and in the event of non payment of the principal or interest on said note within the specified times,* not to exceed two and one half years *(2½ years), Dodson hereby agrees to pay* all expenses, including attorneys fees, should legal proceedings be brought against him in this regard. (emphasis added).

On that day they also executed a sixty thousand dollar ($60,000) promissory note payable to Merchants Park Bank. Dodson paid three of the four quarterly interest payments during the first year of the note, and appellees paid the fourth. When the note became due after one year, the parties signed a one-year renewal note.

Sizenbach and Aycock first became aware that Dodson was not complying with the terms of the renewal when in January of 1975 they received copies of a letter from

the bank demanding that Dodson pay three past-due quarterly interest payments. On February 21, 1975, Sizenbach and Aycock paid the entire year's interest payments to prevent the bank from foreclosing on the collateral.

Due to Dodson's poor payment performance, Merchant Park Bank refused to again renew the note when the principal came due on March 15, 1975. At that time, appellees secured a loan from Long Point National Bank with which they paid the Merchants Park Bank note and transferred the obligation to Long Point National Bank. All three parties signed the Long Point note, and Long Point also required appellees land as collateral. When this note came due in March of 1976, Dodson would not pay the note or sign the extension note. Because their land was collateral for the note, Sizenbach and Aycock signed the renewal note and made all subsequent interest payments, and by the time of trial, had reduced the principal to twenty-five thousand dollars ($25,000.00).

Appellees, Sizenbach and Aycock, filed suit against appellant, Dodson, for breach of contract and fraud based on the fact that Dodson never intended to perform on his agreement, but only intended to pay the sixty thousand dollar ($60,000) note if his investment in the hotel-condominium project was successful.

■ Appellant, in his first point of error, claims that the trial court erred in denying his motion for instructed verdict on the issue of fraud because the evidence was insufficient to support a finding of fraud. It is proper for a trial court to grant an instructed verdict only when there are no material fact issues. *Banquete Independent School District v. Tenneco,* 618 S.W.2d 824 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

In *Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 185 (Tex.1977), the Texas Supreme Court listed six elements of actionable fraud:

(1) that a material representation was made; (2) that it was false; (3) that when the speaker made it he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; (6) that he thereby suffered injury.

The Court determined that the trial court improperly granted an instructed verdict because evidence existed as to each element of actionable fraud.

■ In our case, evidence supported each of these elements. The written contract was a material representation that Dodson would pay the note. That representation was false in that Dodson did not pay the note. Dodson's own testimony at trial showed that he knew the representation was false. Dodson testified that he never intended to pay on the $60,000 note unless the project was successful. He only intended to pay one-third (⅓) of the interest and principal although, "I did not tell them that." Appellant also contends that actionable fraud cannot be based on a promise to perform in the future. A party can base a claim of actionable fraud, however, on a promise of future performance with a present intent not to perform. *Stanfield v. O'Boyle,* 462 S.W.2d 270 (Tex.1971). Dodson's testimony showed that at the time of the contract he intended not to perform.

■ Evidence also showed that appellees relied on the representation. Appellant argues that appellees relied on an independent investigation by Aycock. Aycock did inquire as to the soundness of the investment, but nevertheless, the evidence supports appellee's reliance on Dodson's representation. The evidence also supports the injury element of fraud.

Because evidence of probative force upon which the jury could base its verdict existed in support of all six elements of actionable fraud, the trial judge properly denied Appellant's Motion for Instructed Verdict. We overrule point of error one.

Appellant claims in his second point of error that the trial court erred in denying his motion for instructed verdict on the

issue of his liability under the contract dated March 14, 1973 because the evidence showed that his liability was discharged as a matter of law. Appellant's contention assumes that because the parties had to change the bank to which they were obligated, appellant was no longer bound by his contract with Sizenbach and Aycock.

This case involves three agreements, the two promissory notes, each with a different bank, and the agreement dated March 14, 1973 which sets out the rights and liabilities of the three parties. Dodson's default caused the parties to have to "transfer" their obligation to a new bank. Dodson, himself, in his testimony, repeatedly referred to the obligation as being "transferred." Dodson contends that because the obligation was "transferred" to Long Point National Bank he was no longer bound by the agreement dated March 14, 1973. He claims that because the promissory note to Merchants Park Bank was paid within two and one-half years he fulfilled his obligation under that agreement.

▮ First, Dodson did not pay the Merchants Park Bank note as he obligated himself to do. The note was paid with funds obtained through the three parties executing a promissory note to Long Point National Bank and "transferring" the obligation to Long Point National Bank. Dodson, in fact, had breached the contract at that time.

▮ Second, neither bank was involved in the agreement between the parties dated March 14, 1973. The bank was named in that agreement only as a descriptive term. Dodson could not escape his obligation by forcing the parties to substitute a new bank. The parties obligations to one another remained the same after the obligation to the bank was transferred.

▮ Appellant claims that the execution of the promissory note with Long Point National Bank resulted in a novation. The parties' intent is a key factor in novation. Appellant cites *Utay v. Urbish*, 433 S.W.2d 905 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.) for the proposition that the parties'

intent to accept a new obligation in lieu and in discharge of the old one (novation) can be inferred from the facts and circumstances surrounding the conduct of the parties. The circumstances, however, can also show intent not to discharge the obligation.

▮ In our case, the evidence shows that Sizenbach and Dodson did not intend to discharge Dodson's obligation to pay the note. They transferred the obligation because they had no viable economic alternative. If they had not found substitute funds they would have lost their property. Under Texas law, economic duress vitiates a novation. *Thomas Construction Co., Inc. of Missouri v. Kelso Marine, Inc.*, 639 F.2d 216 (5th Cir.1981). Furthermore, Dodson acquiesced in the transfer by signing the note with Long Point National Bank.

The evidence at trial was sufficient to create a question of material fact as to Dodson's liability under the agreement dated March 14, 1983 and his subsequent breach of agreement. The trial court correctly denied Appellant's Motion for Instructed Verdict. We overrule ground of error two.

Accordingly, we affirm the decision of the trial court.