United States Court of Appeals,

Fifth Circuit.

Nos. 89–2866, 89–2983.

Ted G. WALKER and James D. Brunson, Plaintiffs–Appellants,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Etc., et al. Defendants–Appellees.

Ted G. WALKER, et al., Plaintiffs–Appellants,

v.

MAINLAND SAVINGS ASSOCIATION, Defendant, the Federal Deposit Insurance Corporation, As Manager of the FSLIC Resolution Fund, As Successor to the Federal Savings and Loan Insurance Corporation, As Receiver for Mainland Savings Association, et al., Defendants–Appellees.

Sept. 2, 1992.

Appeals from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, BROWN and JOHNSON, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

In this swelter of multi-court lawsuits, removal, remand, re-removal, settlement and a long-awaited en banc decision, arising out of an atypical land transaction in which the lender allegedly fraudulently failed to make a loan as promised, these interrelated issues emerge: 1) whether the FDIC is a proper party which could remove; 2) whether the district court acquired jurisdiction after the FDIC removed the case from the state appellate court; 3) whether FIRREA applies to cases pending on the date of its enactment; 4) whether the FDIC's voluntary dismissal from the case bars federal jurisdiction; and 5) the merits (or demerits) of the claims against the lender's officers and agents, Hill and Bearden. The district court entertained jurisdiction and granted summary judgment in favor of the FDIC and the officers. First, due to the settlement of all claims involving the FDIC, we dismiss the FDIC from the case; second, we reverse the summary judgment in favor of Defendant Bearden on Walker/Brunson's fraud claim; and third, we affirm the summary judgment in favor of Defendants as to Walker/Brunson's fraud claim against Hill, and with respect to Walker/Brunson's conspiracy and deceptive trade practice claims.

In a Nutshell

Real estate developers Ted Walker and James Brunson (Walker/Brunson) brought suit in Texas state court against the Mainland Savings Association (Mainland) and two of its directors for Mainland's failure to provide a multi-million dollar loan to the developers in connection with Walker/Brunson's sale of a nine-story office building to Mainland. Two connected suits followed, and these were consolidated in state court. After Mainland was declared insolvent, the Federal Savings and Loan Insurance Corporation (FSLIC) was appointed receiver. The FSLIC removed the case to federal district court and the court remanded back to state court, where summary judgment was granted by the Texas trial court in favor of all the defendants. The case was then appealed to the Texas court of appeals by the losing plaintiffs. The Federal Deposit Insurance Corporation (FDIC) succeeded the FSLIC as receiver and the case was again removed to federal district court, which subsequently adopted the state court's orders. Walker/Brunson brought this appeal. We deferred action on this appeal to await the outcome in *In re Meyerland Co.,* 960 F.2d 512 (5th Cir. May 1992) (en banc). While the en banc court's decision in *Meyerland* was pending, the FDIC and Walker/Brunson settled their dispute.

In Detail—The Loose Foundation

The events giving rise to this appeal center around the 1983 sale of the International Energy Center and surrounding property (IEC Building) to Mainland. Appellants Walker/Brunson allege that in October, 1982, they contacted Ron Bearden, a Mainland officer and director, offering to sell the IEC Building to Mainland. Months of negotiations followed, during which the parties discussed a multi-million dollar project development loan to Walker/Brunson. Walker/Brunson contend that this loan was to constitute substantial consideration for the sale of the IEC Building. It is undisputed, however, that no written loan agreement was ever signed by the parties.

Despite the fact that a loan agreement was not reached, the negotiations culminated in the tax-free exchange of the Building and property on August 8, 1983. According to Walker/Brunson,

the transaction was drafted by appellee Raymond Hill, Mainland's attorney and an officer and director of the institution at the time. Walker/Brunson received $1 million cash in exchange for the title to the IEC Building and surrounding property. Walker/Brunson also executed a Warranty Deed with Vendor's Lien to Mainland in which they acknowledged receiving "cash ... in hand paid" as consideration for the sale.

In January, 1985, Walker/Brunson filed suit in state district court, Harris County (Houston), Texas, against Mainland and Hill and Bearden, Mainland's officers, for fraud and breach of contract in connection with the IEC Building sale. On March 25 of that year, Mainland sued separately in Harris County district court to collect on a note (the "Braeburn Hollow Note") executed by Walker/Brunson and Mainland. One week later, on April 2, 1985, Walker/Brunson filed yet another lawsuit in the Harris County district court seeking to enjoin Mainland from foreclosing on real estate collateral securing the Braeburn Hollow Note. Citing the probability of Walker/Brunson's success on the merits of that suit, the court granted a temporary injunction against the foreclosure on May 7, 1985. In July, 1985, these three cases were consolidated in the 190th Judicial District Court, Harris County.

In April 1986, Mainland was declared insolvent, and the Federal Home Loan Bank Board (FHLBB) appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as receiver for the failed institution. The FSLIC then intervened in this case and removed it from the state district court to federal district court. On November 17, 1986, the district court remanded the entire action back to state court, reasoning in its Order that the case involved only state claims. Then, on December 15, 1987, the FSLIC filed a notice of voluntary dismissal without prejudice in state court with respect to its collection claim. Walker/Brunson's action against the FSLIC on the failed loan and the order enjoining the federal agency from foreclosing on the Braeburn Hollow security remained in the consolidated suit in the 190th Judicial District Court.

On July 26, 1989, that court granted the FSLIC's motion for summary judgment on Walker/Brunson's fraud/breach of contract claims in connection with the transfer of the IEC Building and dissolved the temporary injunction against the FSLIC, allowing the agency to go ahead with foreclosure proceedings against Walker/Brunson on the Braeburn Hollow Note. The court also granted summary judgment motions brought by the individual defendants Hill and Bearden, and intervenor MMB–1, Ltd.[1] Walker/Brunson appealed the court's orders to the state court of appeals.

On August 9, 1989, the Federal Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) took effect abolishing the FSLIC and establishing the Federal Deposit Insurance Corporation (FDIC) as the successor to the interests of the FSLIC.[2] On August 29, 1989, the FDIC removed Walker/Brunson's state appeal of the summary judgment orders in favor of the FSLIC/FDIC and the other defendants to the U.S. District Court for the Southern District of Texas, Houston Division, under FIRREA § 209[4] (12 U.S.C. § 1819(b)(2)(B)). On September 1, Walker/Brunson obtained a temporary restraining order in the 234th Judicial District Court of Texas, Harris County, enjoining the FDIC from foreclosing on the collateral for the Braeburn Hollow Note. The same day, the federal district court vacated the state court injunction against the FDIC and adopted the 190th Judicial District Court's summary judgment denial of Walker/Brunson's fraud/breach of contract claims against the FSLIC/FDIC and the individual defendants.

Walker/Brunson then timely appealed to this court. On September 5, 1989, the FDIC foreclosed on the Braeburn Hollow property. After hearing oral arguments from all parties, we deferred decision in this case pending the outcome of *In re Meyerland Co.* (en banc). While awaiting final decision in that case, on July 2, 1991, the FDIC and Brunson/Walker informed this Court that they had settled all claims between them by filing a Joint Motion to Partially Dismiss Claims. We

---

[1]Walker/Brunson do not appeal the portion of the Final Summary Judgment order in favor of MMB–1 to this Court.

[2]FIRREA § 401(a)(1), (f)(2), 12 U.S.C.A. § 1437 note (West 1989).

reserved action on this motion pending Meyerland's outcome. In May, 1992, the en banc court issued its opinion and we then requested the parties to file supplemental briefs in response to *Meyerland.*

We now grant the parties' joint motion to dismiss and order that all claims involving the FDIC be dismissed.[3] The remaining issue left in this lawsuit involves Brunson/Walker's claim against the officer Defendants. After first resolving at length some jurisdictional questions, we address on the merits the sole issue of whether the district court erred in adopting the state court's grant of summary judgment in favor of the officers.

How We Have Jurisdiction

Brunson/Walker urge on appeal that removal was improper and thus federal jurisdiction lacking. We briefly repeat the important procedural events in this appeal relevant to jurisdiction: (1) the state court's July 26, 1989 order granting summary judgment for the FDIC and other defendants, and simultaneous order dissolving the May 7, 1985, temporary injunction against the FSLIC's planned foreclosure on collateral securing the Braeburn Hollow Note; (2) Walker/Brunson's appeal to the state appellate court; (3) the FDIC's August 29, 1989 removal of Walker/Brunson's state appeal of the summary judgment orders in favor of the FSLIC/FDIC and the individual defendants to federal district court; (4) the federal district court's assertion of removal jurisdiction over the proceeding and subsequent adoption of the state court's orders; and (5) the FDIC's dismissal from this lawsuit.

FIRREA and Removal, In General

FIRREA plainly indicates that where the FDIC is a party, federal question jurisdiction exists and removal by the FDIC is proper, except with respect to certain state law claims where the FDIC is appointed receiver exclusively by state authorities.[4] The exception[5] does not apply here, since the

---

[3]In conjunction with this opinion, we have filed a separate order dismissing all remaining claims against the FDIC.

[4]Specifically, FIRREA, § 209[4] (12 U.S.C. § 1819(b)(2)), provides:

FDIC/FSLIC was appointed by a federal authority, the FHLBB.

FIRREA Gives the Job to the FDIC

Walker/Brunson first question whether the FDIC was ever a proper party to this lawsuit. They contend that the FDIC did not become a party either by operation of FIRREA or by appointment under that statute, resulting in improper removal.  We reject this contention and hold

_____

(2) Federal court jurisdiction

    (A) In general

    Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States.

    (B) Removal

    Except as provided in subparagraph (D), the [FDIC] may ... remove any such action, suit, or proceeding from a state court to the appropriate United States district court.

[5]The exception, subparagraph (D), 12 U.S.C. § 1819(b)(2), provides in relevant part:

(D) State actions

    Except as provided in subparagraph (E), any action—

    (i) to which the Corporation, in the Corporation's capacity as receiver of a State insured depository institution *by the exclusive appointment by State authorities,* is a party other than a plaintiff;

    (ii) which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution;  and

    (iii) in which only the interpretation of the law of such State is necessary,

    shall be deemed to arise under the laws of the United States.

(E) Rule of construction

    Subparagraph (D) shall not be construed as limiting the right of the Corporation to invoke the jurisdiction of any United States district court in any action described in such subparagraph if the institution of which the Corporation has been appointed receiver could have invoked the jurisdiction of such court.

(Emphasis added.)

that FIRREA automatically installed the FDIC as the successor to the FSLIC as receiver for Mainland.

By enacting FIRREA, Congress dissolved the FSLIC and removed it as receiver of failed savings institutions.[6] Congress made certain that these institutions remained in federal hands, however, providing in § 401(h) that all receivership orders in effect on August 9, 1989, are enforceable by the (i) Office of Thrift Supervision (OTS), (ii) FDIC, (iii) Federal Housing Finance Board (FHFB), or (iv) Resolution Trust Corporation (RTC), "as the case may be." Three out of these four entities which could possibly succeed the FSLIC as receiver for Mainland are eliminated, as Mainland does not fit within any of these entities' powers.[7] Thus, the remaining entity, the FDIC, is the proper successor to the FSLIC here just by process of elimination.

Clearly, the FDIC is the proper successor to the FSLIC here also by virtue of Congress' clear intent in § 401(f)(2). Section 401(f)(2) of the Act evidenced Congress' intent that pre-FIRREA receiverships not be abolished by providing that the abolition of the FSLIC does not abate lawsuits filed by or against the FSLIC "except that the appropriate successor to the interests of the [FSLIC] shall be substituted ... as a party to any such action or proceeding."[8]

To find otherwise would leave all pre–1989 receiverships, formerly the responsibility of the FSLIC, totally adrift without a successor-receiver. As we have stated before, "we find no indication

---

[6]FIRREA § 401(a) (12 U.S.C.A. § 1437 note).

[7]The FDIC is the only potential successor, since: (1) the OTS is given authority over savings associations in regular operation on August 9, 1989, under 12 U.S.C. § 1463(a)(1), and may not involve itself in matters handled by the FDIC, 12 U.S.C. § 1462a(e)(2)(A); (2) the FHFB deals only with the Federal Home Loan Banks and has no powers with regard to savings associations receiverships, 12 U.S.C. § 1422a(a); and (3) FIRREA appointed the RTC successor to the FSLIC as conservator or receiver for a failed institution only "for which the Federal Savings and Loan Insurance Corporation was appointed conservator or receiver during the period beginning on January 1, 1989, and ending August 9, 1989," 12 U.S.C. § 1441a(b)(6).

[8]*See* 12 U.S.C.A. § 1437 note; *FDIC v. Gillard,* 740 F.Supp. 427, 428 (N.D.Tex.1990).

in the statute that Congress intended to abolish all pre-FIRREA receiverships." *FDIC v. Claycomb,* 945 F.2d 853, 858 (5th Cir.1991).  We hold that the FDIC is the proper successor to the FSLIC as receiver for Mainland, and is a proper party to this action.

## Meyerland:  Removal from State Appellate Court

Assuming the FDIC is a proper party, the problem, says Walker/Brunson, lies in the fact that the FDIC removed the case while it was pending in state appellate court.  It is true that FIRREA does not specifically address whether the FDIC is authorized to remove a proceeding while it is pending in state appellate court.  However, we are now fortunately guided by this Court's recent binding en banc decision in *Meyerland.*  Based on *Meyerland,* we hold that removal was proper.

*Meyerland* 's procedural history is nearly identical to that of this case.  In *Meyerland* the FDIC, successor to the FSLIC as receiver of a failed savings institution, removed to the federal district court a state action involving the FSLIC–Receiver which was pending on appeal in the state appellate court.  The federal district court remanded and awarded sanctions to the appellees.  The en banc Court entertained the FDIC's appeal of the remand order pursuant to 12 U.S.C. § 1819(b)(2)(C), and reversed, holding that Congress meant to authorize the FDIC to remove a state court appellate proceeding under FIRREA § 209.  Walker/Brunson fail to convince us that *Meyerland* is somehow distinguishable and should not apply here.

## FDIC Allowed to Catch Its Breath

Walker/Brunson also contend that removal jurisdiction is lacking because the FDIC unreasonably delayed removal until after they had perfected their appeal to the state appellate court in order to deliberately prejudice them.  With regard to Walker/Brunson's claim of deliberate prejudice, the FDIC removed the case on August 29, 1989, just 20 days after FIRREA was enacted. We do not consider 20 days an unreasonable delay given that suit was first filed nearly four and

one-half years ago.[9] Even assuming that the delay was unreasonable, Walker/Brunson fail to explain how it prejudiced them, other than to point to the inconvenience of preparation for appeal in the state system, or how a prejudice of this sort requires reversal.

## FIRREA Applies to Pending Cases

Walker/Brunson suggest in their motions to remand that federal jurisdiction does not exist under FIRREA since it was enacted after this lawsuit was filed. This argument is meritless. We recently reaffirmed that § 1819 applies to cases pending before its enactment: "Although the FIRREA was enacted after the current proceeding was initiated, it is clear that the FDIC may utilize it." *Meyerland,* 960 F.2d at 514 n. 2. *See also FSLIC v. Mackie,* 949 F.2d 818, 821 (5th Cir.1992); *FSLIC v. Griffin,* 935 F.2d 691, 695 (5th Cir.1991); *Sunbelt Savings, FSB v. Bent Trail Phase IV Joint Venture,* 907 F.2d 1569, 1571 (5th Cir.1990); *Triland Holdings & Co. v. Sunbelt Serv. Corp.,* 884 F.2d 205, 207 (5th Cir.1989).

## FDIC's Exit Fails to Oust Court of Jurisdiction

Finally, assuming federal jurisdiction existed in the first place, Walker/Brunson broadly assert that the FDIC's dismissal from this appeal strips this court of its jurisdiction. To the contrary, as this court recently recognized in *Meyerland,*[10] federal jurisdiction persists even though the FDIC is subsequently dismissed.

In *FSLIC v. Griffin,* 935 F.2d 691, 696 (5th Cir.1991), the FSLIC as receiver entered into a purchase and assumption agreement with First Gibraltar, assigning all assets and secured liabilities.

---

[9]Compare *Meyerland,* a case with nearly identical procedural facts, in which the FDIC did not remove until September 7, 1989, nine days after removing this case and nearly 30 days after FIRREA was enacted. *Meyerland,* 960 F.2d at 514.

[10]In *Meyerland,* 960 F.2d at 515, we emphasized that the power yielded by FIRREA to remove and thus invoke federal jurisdiction is substantial, citing *FDIC v. Griffin,* 935 F.2d 691, 696 (5th Cir.1991), for the proposition that federal jurisdiction continues even when the FDIC has been voluntarily dismissed as a party.

After the case was removed, First Gibraltar intervened and the district court dismissed all counterclaims against the FDIC, which had succeeded the FSLIC as receiver. Concluding that federal jurisdiction remained intact, this court reasoned:

> The power to remove is evaluated at the time of removal. The dismissal of one of the parties by the time of the appeal does not affect the propriety of removal. Congress enacted FIRREA to correct any possible jurisdictional defects existing at the time of removal; the fact that neither the FSLIC or FDIC is a party at the time of appeal cannot defeat this intent.

*Id.* at 696.

Likewise, we retain jurisdiction of this appeal even though we have dismissed all claims involving the FDIC.

The Merits

This brings us to a review of the federal district court's grant of summary judgment in favor of the FDIC and individual Defendants Hill and Bearden. Because all claims by and against the FDIC were dismissed at the outset of this opinion, we consider only the summary judgments awarded in favor of Hill and Bearden.

Walker/Brunson charged that Hill and Bearden were liable for violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA)[11] and for fraud, conspiracy, and estoppel. Specifically, Walker/Brunson asserted that Hill and Bearden promised, but never delivered on, a $21 million loan from Mainland to be advanced contemporaneous with the transfer of title to the IEC Building. Both Hill and Bearden moved for summary judgment on the basis that Texas law does not hold persons acting within the scope of their employment personally liable, which the district court granted. Based on our independent review of the summary judgment evidence, we reverse the summary judgment with respect to Walker/Brunson's fraud claim against Bearden and remand for a

---

[11]Tex.Bus. & Comm.Code Ann. § 17.41, *et seq.* (Vernon 1987).

trial on the merits, and affirm the summary judgment in all other respects.

## Propriety of District Court's Blanket Adoption

Following this case's removal from state appellate court, the district court adopted the state district court's order without first requesting written or oral argument. In *Meyerland,* we found that a district court acquiring jurisdiction after the entry of final state court judgment may "take the judgment as it finds it, prepare the record as required for appeal, and forward the case to a federal appellate court for review."[12] There we likened the case to situations where federal appellate courts regularly remand cases to district courts with instructions to take a prescribed action, such as enter judgment for a specified party. *Id.* Based on our reasoning in *Meyerland,* the district court was permitted to simply adopt the state court's orders without further argument by the parties.

## Standard of Review

The standard of review is the same as if the federal court itself had entered the order. In effect, we look through the federal district judge's eyes at the state court's justifications for these orders. Federal rather than state procedural law applies since federal law controls the course of proceedings from the point of removal.[13] We review the summary judgment award de novo,[14] independently of the state or federal district court, and resolving all reasonable doubts and drawing all reasonable inferences in favor of the party opposing summary judgment. *FDIC v. Hamilton,* 939

---

[12]*Meyerland,* 960 F.2d at 520. *See also id.* (a case removed from state court simply comes into the federal system in the same condition in which it left the state system) (citing *Granny Goose Foods v. Brotherhood of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 436, 94 S.Ct. 1113, 1122, 39 L.Ed.2d 435, 449 (1974)); *In re Savers Federal Savings and Loan Ass'n,* 872 F.2d 963, 966 (11th Cir.1989) (holding in FIRREA case that federal courts must "treat everything that occurred in the state court as if it had taken place" in federal court).

[13]*See Granny Goose Foods,* 415 U.S. at 437, 94 S.Ct. at 1123, 39 L.Ed.2d at 449 (" ... once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings"); *Nissho–Iwai American Corp. v. Kline,* 845 F.2d 1300, 1303 (5th Cir.1988) (a prior state court order in essence is federalized when the action is removed to federal court).

[14]*See Impossible Electronics Techniques v. Wackenhut Protective Servs.,* 669 F.2d 1026, 1030 (5th Cir. Unit B 1982).

F.2d 1225, 1227 (5th Cir.1991); *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986).

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Claims Against Hill and Bearden Individually

Defendants Hill and Bearden primarily argue that the district court correctly granted summary judgment in their favor on the basis that they cannot be held personally liable in Texas as long as they did not perform any acts or make any representations outside the scope of their employment.

To the contrary, the Texas Supreme Court has held that in a claim under the DTPA, an individual corporate agent may be held liable for oral or written misrepresentations made by him. *Weitzel v. Barnes,* 691 S.W.2d 598, 601 (Tex.1985). An officer is individually liable for any tortious conduct that he committed in connection with his corporate duties. *Leyendecker & Assoc., Inc. v. Wechter,* 683 S.W.2d 369, 375 (Tex.1984). If a corporate officer knowingly participates in a tortious act, there is no need to pierce the corporate veil in order to impose personal liability. *Grierson v. Parker Energy Partners 1984–I,* 737 S.W.2d 375, 377–78 (Tex.App.—Houston [14th Dist.] 1987, no writ). Thus, Texas law makes clear that both Walker and Bearden may be held individually liable for deceptive or fraudulent represent ations they made despite their acting within their corporate authority.

Walker/Brunson alleged DTPA violations as well as fraud, conspiracy and estoppel. Hill and Bearden produced competent summary judgment evidence supporting their position that they made no false representations. To defeat Defendants' summary judgment motion, Walker/Brunson were required to produce evidence sufficient to create a genuine fact issue as to each of the elements essential to their case.

### (i) *Fraud and Conspiracy*

The elements of actionable fraud are (1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983). Since intent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence. Moreover, intent is a fact question uniquely within the realm of the trier of fact. *Maulding v. Niemeyer,* 241 S.W.2d 733, 738 (Tex.Civ.App.—El Paso 1951). A party can base a claim of actionable fraud on a promise of future performance with a present intention not to perform. *Dodson v. Sizenbach,* 663 S.W.2d 13, 15 (Tex.App.—Houston [14th Dist.] 1983, no writ).

Although Defendants submitted summary judgment evidence alleging that they made no material misrepresentations, Walker/Brunson countered this evidence with proof sufficient to create a genuine issue of fact as to each of the elements necessary to prove fraud. Walker submitted sworn affidavits testifying that Bearden personally represented to Walker/Brunson that they would receive, among numerous other things, a loan for building a 238–room Homotel in exchange for title to the IEC building and property. The testimony revealed that almost all of the negotiations were performed directly with Bearden. The affidavits also stated that prior to the closing, Bearden knew that Mainland had no intention of funding the loan, yet failed to disclose this fact at the closing, and thus induced Walker/Brunson to convey title to their building based on this misrepresentation, causing

them damage. This is further supported by a letter from Walker to Mainland, making clear Walker/Brunson's expectations and demands which were to culminate in a written agreement at the closing. Resolving all reasonable doubts and drawing all reasonable inferences in favor of Walker/Brunson, we conclude that a fact issue remains as to whether Bearden is liable for fraud.

As to Defendant Hill, however, the summary judgment evidence failed to demonstrate how or when Hill made any representations, and instead Walker/Brunson draw mere conclusions, with no basis in fact, that Hill "conceptualized" the transaction. Although the summary judgment evidence did indeed show that Hill was surprised that the transaction had not closed sooner, and that Hill responded "I'll take care of it" when Walker expressed his need for the loan money, this is not enough to negate Defendant Hill's summary judgment proof. Thus, we affirm the summary judgment on the fraud claim against Hill.

Similarly, with respect to their conspiracy claims, Walker/Brunson arrive at the conclusion that Hill conspired with Bearden based solely on the fact that Hill was present at the closing, supervised the funding of money and drafted the agreement confirming their land transfer transaction. This is insufficient evidence to defeat Defendant's summary judgment on the conspiracy claim. Moreover, our holding that Walker/Brunson failed to demonstrate a fact issue on their fraud claim against Hill is lethal to Walker/Brunson's conspiracy claim, since proof of an illegal purpose or means is essential to an action for conspiracy.[15]

(ii) *DTPA*

This brings us to the DTPA claims against Hill and Bearden. To avoid summary judgment,

---

[15]Walker/Brunson also claim that Hill is estopped from claiming that he did not misrepresent the loan proposal, styling this claim as an affirmative cause of action. Estoppel is not a cause of action under Texas law, but is a defensive weapon meant to preserve existing rights. *See Sessions v. Whitcolm,* 329 S.W.2d 470, 475 (Tex.Civ.App.1959, writ ref'd n.r.e.) (estoppel is a protective and not an offensive weapon or cause of action). Thus, we do not recognize Walker/Brunson's assertion of estoppel as an affirmative claim.

Walker/Brunson first were required to produce summary judgment evidence showing that they were consumers seeking or acquiring "by purchase or lease, any goods or services." Tex.Bus. & Com.Code Ann. § 17.45(4) (Vernon 1987). Defendants claim that summary judgment was proper on the DTPA claim because Walker/Brunson are not consumers within the meaning of the DTPA as a matter of law, reasoning that they did not seek or acquire goods or services by purchase or lease.

A pure loan transaction lies outside the DTPA based on the logic that money is neither a good nor service. *See Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169 (Tex.1980). Since 1980, however, Texas law has undergone considerable departure from this facially simple statement. In *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705 (Tex.1983), the consumer sought financing for a house. Without overruling *Riverside,* the supreme court held that the DTPA applied, reasoning that plaintiffs were consumers since they "did not seek to borrow money; they sought to acquire a house." *Id.* at 708. Similarly, in *Knight v. Int'l Harvester Credit Corp.,* 627 S.W.2d 382 (Tex.1982), plaintiff was a consumer since he sought a loan in order to purchase a dump truck. In both cases, however, the goods or services sought by the borrower formed the basis for the DTPA complaint. Based on this distinguishing factor, the court in *Central Texas Hardware v. First City,* 810 S.W.2d 234, 237 (Tex.App.—Houston [14th Dist.] 1991, writ denied), recently held that the plaintiff was not a consumer simply because he intended to acquire seasonal inventory goods with the loan. Because the plaintiff did not allege any complaint regarding the inventory items they intended to purchase with the loan, the court ruled that the second step of the two-prong test in determining consumer status was not satisfied.[16]

---

[16]*Id. But see Security Bank v. Dalton,* 803 S.W.2d 443 (Tex.App.—Fort Worth 1991, writ denied). In *Dalton,* the court of appeals qualified plaintiffs as consumers under the DTPA because they sought loans for the specific purpose of erecting a funeral home building, inventory and other equipment.

The Texas courts of appeal are obviously split on this issue. Because *Riverside* has yet to be expressly overruled, we believe the court of appeals in Houston has taken the wisest and most logical course.

Likewise, in the instant case, although Walker/Brunson sought to use the multi-million dollar loan for the construction of a 238–room Homotel, they allege no complaint pertaining to the Homotel itself. We find that Walker/Brunson are not consumers within the meaning of the DTPA, and hold that summary judgment was correctly granted in favor of Defendants with respect to Walker/Brunson's DTPA claim.

Considering the high federal demands in a summary judgment inquiry that the facts demonstrate a genuine issue, we hold that Walker/Brunson's claims against Hill for fraud and conspiracy fail for lack of sufficient evidence. We also hold, however, that the summary judgment evidence was sufficient to create a fact issue on Walker/Brunson's fraud claim against Bearden. We reverse and remand this fraud claim to the federal district court with instructions to remand to the state district court since this involves only state law. Accordingly, we affirm in part and reverse in part the federal district court's adoption of the state court's grant of summary judgment in favor of Defendants.[17]

AFFIRMED IN PART AND REVERSED IN PART.

---

[17]We deny Hill's various claims for attorneys' fees for costs in this appeal. We fail to find that the appeal was frivolous or otherwise merits a fee award. We let stand that state court's assessment of fees against Walker/Brunson as they apply to actions taken in that court and in the state appellate court but hold that the state court's assessments for the taking of appeal do not apply and are not involved in the appeal before us here.